**GENERAL HOMES, INC., Appellant,**

v.

**Wright DENISON, Appellee.**

No. A2752.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 10, 1981.

Patricia Hair, Baker & Botts, Houston, for appellant.

Ed. Dodd, Brown, Sims & Ayre, Houston, for appellee.

Before J. CURTISS BROWN, C. J., and JUNELL and PRICE, JJ.

PRICE, Justice.

This appeal arises from a jury verdict supporting quantum meruit recovery for appellee against his former employer appellant for services as a sales counselor. Appellee, who was hired pursuant to a written commission agreement in 1975, sought recovery for commissions on the sale of 22 residences closed after he was terminated from employment, but for which he had initiated the sales prior to leaving employment. He contended that such services were not covered by the written contract. The case was submitted to the jury solely on a quantum meruit theory on five special issues, and this appeal follows. We reverse and render.

Appellee worked for appellant as a sales counselor in the home-building business pursuant to a written letter agreement for approximately nine months from December 12, 1975, to August 13, 1976. Appellee's duties included general maintenance of the subdivision, posting signs, and overseeing the entire sales transaction of appellant's homes including showing the home, initiating the sale, submitting the earnest money contract, assisting a prospective purchaser in obtaining mortgage financing, inspecting finished residences for quality control, and introducing purchasers to the homes they bought as well as completing the process for those transactions which had been begun by former employees prior to their leaving company employment.

Under the terms of the written agreement, appellee received a straight salary during his training period from December 12, 1975, through December 31, 1975, with a provision that any sales made during such training period, regardless of when they were closed, would be divided pro rata with the other salesmen in the project. The written agreement further provided that beginning January 1, 1976, appellee was to receive a monthly draw of $1875.00 against commissions until commissions on closings equaled the total money drawn to date plus one extra month's draw of $1875.00. The commission schedule for the one year period from January 1, 1976, through December 31, 1976, was graduated in 3 increments from 1¼% on closings to $1,000,000 to 2% on closings over $1,500,000. The agreement further stated that if, for any reason whatsoever, his employment ceased, any loans closed by him up to and including the termination date, would be paid to him on the fifteenth after the month following closing. Appellant was timely paid for all closings by him through his termination date of August 13, 1976. At the time of his termination, no compensation was being paid to him for sales closed by other salesmen or leads furnished or prospective sales attributed to him that failed to close. The letter agreement provided he would be paid commissions on sales he closed.

The personnel manual given to appellee at the time he commenced employment on December 12, 1975, provided that commissions on sales that were initiated by former employees but which closed after they left the employment of General Homes, or were terminated, were to be divided among the remaining salesmen in the subdivision. Appellee admitted that he closed sales in January, 1976, on contracts initiated by other salesmen who left employment and that he received a share of the commissions for those sales. He admitted that, prior to obtaining any earnest money contracts for closings made the basis of this suit, the commissions on sales initiated by former employees but which closed after they left were split between remaining salesmen. He admitted he knew in January, 1976, that if he quit or was terminated he would not receive commissions on closings on earnest

money contracts initiated by him if the closings occurred after he left. He admitted he was never told that he would be paid for sales that were closed by other salesmen nor was he ever advised that he would be paid for merely having a purchaser sign an earnest money contract. Until this suit was filed, he never advised anyone at General Homes that he expected to be paid for sales that he initiated but which were closed after he left. The evidence showed that the payment of commissions on sales initiated by a former employee to the remaining salesmen was made in order to compensate those salesmen who were required to spend substantial periods of time to complete and close the sale. It was against company policy to pay an employee who had left the company a commission on a sale that closed after he left. Consistent with that policy, no payment had ever been made by the company to a salesman for a commission on sales that closed after he left employment. Also consistent with that policy, the provisions of the personnel manual, and appellant's understanding, the commissions on sales initiated by appellee but closed after he was terminated were in fact paid and divided among the other salesmen. These are the commissions made the basis of this suit.

Appellee was terminated on August 13, 1976, and does not contend that such termination was wrongful. He contends that he is entitled to recover the commission on twenty-two home sales he initiated but which were closed after his termination on August 13, 1976, and before December 31, 1976. He claims these services were outside the written contract because the written contract did not expressly state he would *not* be paid commissions on sales closed after his termination. Appellee, in order to establish an implied agreement to pay commission closings after his termination, seeks to differentiate between what he thought or assumed the written contract specified on December 12, 1975, when he was first employed, and what his admitted actual understanding and knowledge was of the procedure and agreement on such matters in January, 1976, prior to the time he did

any of the work on which he sues for quantum meruit. In response to special issues, the jury found (1) the services rendered by appellee were not covered by the written agreement; (2) that the appellant benefited from such services; (3) that appellant voluntarily accepted the services of appellee with the reasonable expectation it would be charged for those services; (4) that a reasonable value of the services rendered was $7256.20; and, (5) that reasonable and necessary attorney's fees were $2250.00.

■ The parties agree on the well–settled law that if the work in question is covered by an express contract, there can be no recovery in quantum meruit. *Black Lake Pipe Line Company v. Union Construction Company, Inc.*, 538 S.W.2d 80 (Tex.1976); *Woodard v. Southwest States, Inc.*, 384 S.W.2d 684 (Tex.1964); *Teague v. Edwards*, 159 Tex. 94, 315 S.W.2d 950 (1958); *Electric Wire and Cable Co. v. Ray*, 456 S.W.2d 260 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.).

■ In order to recover under quantum meruit, the services rendered by the appellee must be accepted and used by the appellant under such circumstances as would reasonably notify the appellant that appellee expected the appellant to pay for his work; the basis for a claim in quantum meruit is either an express or implied agreement to pay for the work. *Electric Wire and Cable Company v. Ray*, 456 S.W.2d 260 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.); *Black Lake Pipeline Co. v. Union Construction Co., Inc.*, 538 S.W.2d 80 (Tex.1976). Appellant asserts there is no evidence that appellant agreed to pay commissions to appellee for homes closed after he left the employment of appellant. Appellant urges that no evidence exists to support the jury's affirmative answer to special issue number three that the services rendered by appellee to appellant were voluntarily accepted by appellant with the reasonable expectation of being charged for those services, and that the trial court erred in failing to grant appellant's motion for judgment n. o. v.

When a no evidence point is raised, the court will consider only the evidence supporting the finding, giving effect to all reasonable inferences that may properly be drawn therefrom, and disregarding all contrary or conflicting evidence. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773 (Tex. 1974). Appellee does not point to any evidence of appellant's express or implied expectation, willingness or agreement to pay appellee for post-termination closings either in his brief or in his oral argument before the appellate court and we have been unable to find any after reviewing the record. The letter agreement, the personnel manual and appellee's understanding by his own testimony prior to securing any of the escrow contracts sued on was that he received commission only on sales that *he closed*. After his training period, he would be paid only his commissions or a draw against his commissions, and those commissions would be paid on closings he made. Appellee has not pointed us to any evidence in the record to support the jury's answer to special issue number three, nor have we found any. To the contrary, the evidence shows conclusively that appellee General Homes at no time expected to be charged for commissions by an employee on sales that closed after an employee left employment, and likewise, the evidence conclusively shows that appellee had actual knowledge and understanding prior to securing any of the escrow contracts sued on, that no commissions would be paid to him on sales that closed after he left the company employment. Accordingly, we sustain appellant's fourth point of error and hold there is no evidence to support the jury's finding to special issue number three and that appellant's motion for judgment n. o. v. should have been granted by the trial court.

 Appellant also contends the trial court erred in failing to grant appellant's motion for judgment n. o. v. because there was no evidence to support the jury finding on special issue number one that the services rendered by appellee were not covered by the written agreement. A person should be compensated for his efforts when an express contract does not provide recovery for the reasonable value of the services rendered and accepted. *Black Lake Pipe Line Co. v. Union Construction Co. Inc.*, 538 S.W.2d 80 (Tex.1976). The action based on quantum meruit must involve obligations outside the scope of the express contract. The Supreme Court has established a two pronged test to determine whether the performance of certain tasks is outside of the obligations provided for in an express contract: (1) whether the work performed by the party is extra; (2) whether the express contract between the parties makes a provision for the extra work performed. *Black Lake Pipe Line Co. v. Union Construction Co., Inc., supra* at 86. A threshold problem of evaluating the "extra work" test is first to determine what the "work" was. In the instant case the work performed by appellee for which he seeks compensation is the work covered by the express contract. It is the same work which is required of all General Homes sales counselors, and such work is comprised of the same duties and responsibilities which he performed under the written contract for which compensation was provided in the form of commissions or monthly draw against commissions. As heretofore discussed in the opinion, there was no agreement or understanding, either express or implied, that appellee was to be paid extra or additional compensation for such sales closed after he terminated employment over and above the compensation provided by the agreement. Also, by the performance of the services of securing the escrow contracts sued on, appellee was not performing any additional or extra work beyond the scope of the written contract, nor was he a volunteer of "extra work" without compensation beyond the scope of the written contract. *Dallas Elec. Supply Co. v. Barnum Company*, 185 S.W.2d 427 (Tex.1945); *Wood v. Texas Farmers Ins. Co.*, 593 S.W.2d 777 (Tex.Civ.App.— Corpus Christi 1979, no writ).

There is no proof or evidence in the record that the services rendered by appellee in initiating the sales of the twenty-two residences that closed after his termination

of employment were anything other than the regular anticipated duties of a General Homes sales counselor for which the letter agreement provided compensation. Accordingly, we find there is no evidence upon which the jury could find the services made the basis of this suit were not covered by an express agreement (special issue number one) and the trial court erred in not granting appellee's motion for judgment n. o. v.

Since we have held the trial court should have granted appellant's motion for judgment n. o. v. because there was no evidence to support the jury findings on special issue number one and special issue number three, we do not reach or decide appellant's remaining points of error, including the factual "insufficient evidence" and "against the great weight and preponderance of evidence" points of error. We reverse and render judgment that appellee take nothing. Costs are to be assessed against appellee.