Opinion issued March 31, 2005









     




In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00152-CV




ROBERT D. FRISCH, Appellant

V.

WESTIN HOMES OF TEXAS, INC., Appellee




On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2002-59971




MEMORANDUM OPINION

          Robert D. Frisch sued Westin Homes of Texas, Inc. (Westin) for breach of
contract and quantum meruit. The trial court rendered summary judgment for Westin. 
We hold that a genuine issue of fact exists on Frisch’s breach of contract claim, and
that no genuine issue of fact exists on Frisch’s quantum meruit claim. We therefore
affirm in part, and reverse and remand in part. 
Background
          Westin, a home building company, hired Frisch as a builder in October 2000. 
Westin compensated Frisch with a salary and completion bonuses. On May15, 2002,
Westin fired Frisch. Frisch sued Westin for breach of contract and quantum meruit,
alleging that Westin did not pay Frisch (1) unpaid vacation pay, (2) unpaid salary, (3)
unpaid completion bonuses, (4) bonuses improperly paid to a second builder, Kevin
Love, (5) a properly computed bonus for one-story homes, (6) a six-month buyer
satisfaction survey bonus, and (7) bonuses for May 2002 homes under construction. 
Westin moved for a traditional and a no-evidence summary judgment, asserting that
Frisch proved neither a breach nor an injury. See Tex. R. Civ. P. 166a(c), (i). 
          Westin attached to its traditional motion for summary judgment (1) an affidavit
by Jason Golan, the Westin General Manager, (2) Westin’s April 2001 bonus plan,
and (3) Westin’s final paycheck to Frisch dated May 30, 2002.


 Frisch responded to
the motion for summary judgment, attaching his own affidavit and Westin’s January
2001 bonus plan. Westin objected to Frisch’s affidavit. The trial court rendered
summary judgment without ruling upon Westin’s objection to the affidavit. 
          Unpaid Vacation Pay
          Frisch earned two weeks vacation per year, which he could either use or accept
cash as a substitute. The final paycheck provides that Westin paid Frisch $1,100 for
his remaining 35.21 hours of vacation, thereby creating a zero balance of vacation
hours. Golan avers that he paid Frisch in lieu of his remaining vacation days;
however, Frisch avers that Westin owes him $1,400 for about one week of vacation
that he never took.
          Unpaid Salary
          Westin hired Frisch in October 2000. Frisch avers that Westin agreed to
employ him through May 31, 2002. Westin fired Frisch on May15, 2002—two weeks
shy of the agreement. Frisch therefore contends that Westin owes him a balance of
$2,500 for unpaid salary. Frisch did not offer an employment contract as summary
judgment evidence. Westin, however, does not dispute the existence of an
employment contract, but instead contends that it did not breach the agreement. 
Rather, Westin terminated Frisch for cause and thus, Frisch is not entitled to a salary
for the last two weeks in May after his termination.


 
          Unpaid Completion Bonuses
          The April 2001 bonus plan provides that Westin will pay the builder a
“completion bonus” of $750 for homes “finished and closed” in 84 days after the
foundation is poured. In addition, Westin will pay an “early closing bonus” of $15
per day for each day the home is closed before the 84th day. Westin will deduct a
“penalty” of $15 per day for each day after the 84th day. For example, if a home is
closed in 82 days, Westin pays $780: a $750 completion bonus, plus a $30 early
closing bonus (2 days early multiplied by $15 per day). If a home closed in 86 days,
Westin pays $720: a $750 completion bonus less a $30 penalty (2 days late multiplied
by $15 per day). 
          The April 2001 bonus plan provides that the home must be “complete and
signed off” to begin computing the bonus.


 Golan avers that the “sign off” date is the
date management signs off on a home. Frisch avers that David Dorn, the vice-president of construction, delayed the sign-off date because he “failed to walk the
unsold homes with [Frisch] to assess the specifications and make a correction list
prior to the 84 day deadline.” Golan avers that Westin paid Frisch his proper
completion bonus. Frisch avers, however, that Westin failed to pay him a correct
completion bonus on over 40 homes that he closed between January 2001 and May
2002, resulting in an amount that “very likely exceeds $10,000 or $11,000.” 
          Bonuses Improperly Paid to Kevin Love
          In February 2001, Westin hired Kevin Love as a second builder and as Frisch’s
assistant. Westin transferred six of Frisch’s homes to Love. Frisch avers that Westin
agreed to pay Frisch a pro-rata share of the completion bonuses on these homes based
on the construction phase of each home as of the date of the transfer. The January
2001 bonus plan includes a handwritten notation that states, “Split of hours w/ my
assistant—pro rata share of house @ stage turned over.” Westin paid Love $4,200
when the homes were completed in March 2001. Frisch avers that his pro-rata share
is $3,000, and that despite his numerous requests to Westin, Westin has not paid him. 
Golan’s affidavit does not address Love or the homes six homes completed in 2001
before Frisch’s termination. Golan avers that Frisch was not eligible to receive a
bonus on any homes completed after Frisch’s termination because “the builder who
took over the homes previously being built by Mr. Frisch were to be paid a bonus
pursuant to the bonus plan regardless of the state of the home at the time the home
was reassigned.”
 
          77-day Completion Bonus
          Frisch avers that the January and April 2001 bonus plan provide an 84-day
completion bonus deadline; however, the April 2001 plan provides a 84-day deadline,
and the January 2001 plan provides a 91-day deadline. A handwritten notation on the
January 2001 plan states, “Slab pour—12 weeks 2 story, 11 weeks 1 story,” thus
resulting in a 77-day deadline for one story homes. Frisch avers that Westin
improperly computed his bonus for one-story homes based on a 77-day
deadline—instead of the agreed upon 84-day deadline—thereby resulting in shortage
of $105 per home (7 day penalty of $15 per day). Frisch avers that Westin improperly
computed the bonus on 35 one-story homes; therefore, Westin owes him $3,675. 
Frisch does not state the date of these closings. Golan’s affidavit, which refers only
to the April 2001 bonus plan’s 84-day deadline, does not address this issue. 
          Six-month Buyer Satisfaction Survey Bonus
          The January 2001 bonus plan states that, to determine customer satisfaction,
Westin will provide new homeowners with a survey after they have lived in a home
for six months. Westin will pay the builder $50 for each survey scoring four or
higher. The April 2001 bonus plan eliminates this six-month survey bonus. Frisch
avers that he should have received this bonus for 12 homes that he closed between
January and April 2001 before his termination; therefore, Westin owes him $600. 
 
          Bonuses for May 2002 Homes under Construction
          Frisch avers that, as of his termination on May 15, 2002, he had 14 homes
under construction. These homes were completed after his termination. Frisch avers
that Westin owes him $9,000 for his pro rata share of the completion bonus. Golan
avers, however, that Frisch was not eligible to receive a bonus for homes completed
after his termination:
Instead, the builders who took over the homes previously being built by
Mr. Frisch were to be paid a bonus pursuant to the bonus plan regardless
of the state of the home at the time the home was reassigned. 
Additionally, there was no agreement or understanding, either express
or implied, that Mr. Frisch was to be paid extra or additional
compensation for the homes that were completed after his employment
was terminated that would be over and above the compensation
provided by the employment agreement and bonus plan. 
Frisch contradicts Golan’s assessment. Frisch avers that his agreement with Westin
provided that he would not forfeit his pro rata share of the completion bonus for
homes under construction at the time of his termination.
Standard of Review
          We review a summary judgment under a de novo standard. Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). We view all evidence
in a light favorable to the nonmovant, and we indulge every reasonable inference in
the nonmovant’s favor. Id. For a traditional summary judgment, the moving party
must show that no genuine issue of material fact exists and that it is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c). After adequate time for
discovery, a party may move for a no-evidence summary judgment on the ground that
no evidence exists of one or more essential elements of a claim or defense on which
an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i). The
trial court must grant the motion unless the respondent produces summary judgment
evidence raising a genuine issue of material fact. Id. If, as here, the trial court’s order
does not specify the grounds for its summary judgment, then we affirm should any of
the theories presented to the trial court and preserved for appellate review have merit. 
See Knott, 128 S.W.3d at 216.
Objection to Frisch’s Affidavit
          Without pointing to any specific statements within Frisch’s affidavit, Westin
generally objected to it on the basis that the affidavit “contains conclusions,
unsubstantiated opinions, hearsay,” and “self-serving statements of an interested
party.” The trial court rendered summary judgment without ruling on Westin’s
objections. Westin contends that the trial court implicitly granted Westin’s
objections.


 In Green v. Industrial Specialty Contractors, we addressed these issues
and held that an objection based on a summary judgment affidavit’s conclusory
statements is an objection to substance, which may be raised for the first time on
appeal; whereas, an objection based on lack of foundation or hearsay is an objection
to form, which requires a written ruling for appellate review. 1 S.W.3d 126, 130
(Tex. App.—Houston [1st Dist.] 1999, no pet.) (reviewing challenge to summary
judgment in favor of employer when employee did not obtain trial court ruling on her
objection to employer’s summary judgment affidavits). 
          Here, Westin’s objection that Frisch’s affidavit is conclusory is an objection
to the substance of the affidavit, which may be raised for the first time on appeal. See
id. (citing City of Wilmer v. Laidlaw Waste Sys., Inc., 890 S.W.2d 459, 467 (Tex.
App.—Dallas), aff’d, 904 S.W.2d 656, 660-61 (Tex. 1995)). Thus, Westin did not
need to obtain a ruling to raise this objection on appeal. See id. Contrary to Westin’s
assertion, however, Frisch’s affidavit is not conclusory. Rather, it is based on
Frisch’s personal knowledge derived from his employment with Westin and provides
the underlying specific factual basis for his statements. We therefore hold that the
affidavit is not conclusory. See id. 
          Westin’s objections that Frisch’s affidavit contains statements of opinion and
hearsay are objections to the form of the affidavit. See id. To preserve these
complaints for appellate review, Westin had to obtain a written ruling on its
objections. See id. Westin did not do so, and therefore, failed to preserve these
objections for appellate review. 
          Even if a trial court’s summary judgment is adequate to infer that it impliedly
had sustained a movant’s specific objections to the non-movant’s summary judgment
evidence under Rule 33.1(a),


 here, Westin’s global objection is too general to present
an issue for review. See Tex. R. App. P. 33.1(a)(1)(A) (requiring that complaint be
sufficiently specific to make trial court aware of complaint). Westin objected to
Frisch’s five-page affidavit without pointing to any specific statements within the
affidavit. Westin’s objection thus lacked sufficient specificity for an appellate court
to review the objection for its merit without a specific ruling from the trial court. See
id. Under these facts, a ruling cannot be inferred. We hold that Frisch’s affidavit was
properly before the trial court, and that the trial court did not implicitly grant Westin’s
objection to the affidavit when it rendered summary judgment for Westin. 
          Westin also objected that Frisch’s affidavit was self-serving. The fact the
affidavit is self-serving does not make it improper summary judgment evidence. 
Trico Techs. Corp. v. Montiel, 949 S.W.2d 308, 310 (Tex. 1997). Summary judgment
based on the uncontroverted affidavit of an interested witness is proper if the
evidence is clear, positive, direct, otherwise credible, free from contradictions and
inconsistencies, and could have been readily controverted. Id.; Tex. R. Civ. P.
166a(c). The affidavit describes with specific details (1) the nature of the agreement,
(2) the alleged breaches, and (3) the specific amounts owed under the agreement. It
is neither contradictory nor internally inconsistent. In addition, both parties submitted
documentation that is consistent with their respective affidavits. Frisch’s
controverting affidavit meets the requirements of rule 166a(c), and thus was proper
summary judgment evidence. See Tex. R. Civ. P. 166a(c). 
Breach of Contract
          To prevail on a contract claim, a plaintiff must prove: (1) a contract existed
between the parties; (2) the contract created duties; (3) the defendant breached a
material duty under the contract; and (4) the plaintiff sustained damages. Bayway
Services, Inc. v. Ameri-Build Const., L.C., 106 S.W.3d 156, 160 (Tex. App.—Houston
[1st Dist.] 2003, no pet.). Westin asserts that Frisch proved neither a breach nor an
injury. 
          Frisch avers in his affidavit that Westin owes him (1) $1,400 for about one
week of unpaid vacation, (2) $2,500 for unpaid salary for the last two weeks in May
after his termination, (3) $10,000 or 11,000 for unpaid completion bonuses, (4)
$3,000 for his pro-rata share of bonuses improperly paid to Love, (5) $3,675 for the
77-day completion bonus, (6) $600 for the six-month buyer satisfaction survey bonus,
and (7) $9,000 for his pro-rata share of bonuses for May 2002 homes under
construction. In response, Golan avers that Westin either paid or does not owe these
amounts. Viewing Frisch’s affidavit in the light most favorable to Frisch, we hold
that the affidavit raises genuine issues of fact with regard to whether Westin owes
Frisch on the disputed items. We therefore hold that the trial court erred in rendering
summary judgment on the breach of contract claim.
Quantum Meruit
          Alternatively, Frisch contends that Westin owes him the completion bonuses
on the homes closed after his termination, based on the doctrine of quantum meruit. 
Quantum meruit is an equitable theory of recovery based on an implied agreement to
pay for benefits received. Heldenfels Bros., Inc. v. City of Corpus Christi, 832
S.W.2d 39, 41 (Tex. 1992). A plaintiff must establish that (1) valuable services
and/or materials were furnished, (2) to the party sought to be charged, (3) which were
accepted by the party sought to be charged, and (4) under such circumstances as
reasonably notified the recipient that the plaintiff, in performing, expected to be paid
by the recipient. Id. An action based on quantum meruit involves obligations outside
the scope of the express contract. Vortt Exploration Co. v. Chevron U.S.A., Inc., 787
S.W.2d 942, 944 (Tex. 1990). The parties here do not dispute the existence of an
employment contract. 
          Our sister court addressed a similar fact pattern in General Homes, Inc. v.
Denison, 625 S.W.2d 794 (Tex. App.—Houston [14th Dist.] 1981, no writ). In
Denison, a sales counselor in a home-building business sought recovery for
commissions on the sale of 22 residences closed after he was terminated from
employment, but for which he claimed that he had initiated before leaving his
employment. Id. at 795. He sued his employer for quantum meruit, contending that
such services were not covered by the written contract. Id. The Fourteenth Court of
Appeals held that Denison had not performed any additional or extra work beyond
the scope of the written contract, nor was he a volunteer of “extra work” without
compensation beyond the scope of the written contract. Id. at 797 (holding that trial
court erred in denying motion for judgment n.o.v.). 
          Frisch contends that Denison is distinguishable because, in that case, the
company’s personnel manual provided that the company would divide any
commissions initiated by former employees among the remaining salesmen in the
subdivision. Id. at 795. As in Denison, however, Frisch offers no evidence that he
performed any “extra work” beyond the scope of the agreement. See id. 
          Without offering any an employment contract or personnel manual, Frisch
avers that he and Westin “expressly addressed this issue at the time the original bonus
plan was compiled in January 2001, and agreed not to include a forfeiture clause in
the bonus plan.” Frisch contends that he and Westin agreed that Westin would pay
him a pro-rata share of the completion bonuses on homes closed after his termination. 
By his own assertion, Frisch contends that these bonuses were part of the agreement. 
Because an express contract covers the work in question, no recovery in quantum
meruit exists. See Vortt, 787 S.W.2d at 944. Thus, the trial court properly rendered
summary judgment on Frisch’s quantum meruit claim.
Conclusion
          We hold that a genuine issue of fact exists on Frisch’s breach of contract claim,
and therefore reverse that portion of the judgment of the trial court and remand the
cause for further proceedings. We further hold that no genuine issue of fact exists on
Frisch’s quantum meruit claim and therefore affirm the trial court’s summary
judgment on that claim. 




                                                             Jane Bland
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Higley and Bland.