Opinion issued November 16, 2006












 
     

In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01061-CV




TRICON TOOL & SUPPLY, INC., Appellant

V.

BRUCE E. THUMANN, Appellee

* * *

BRUCE E. THUMANN, Appellant

V.

TRICON TOOL & SUPPLY, INC., Appellee





On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2002-38866



O P I N I O N
            Appellant and “cross-appellee,” Tricon Tool & Supply, Inc. (“Tricon”), appeals
the trial court’s judgment rendered on a jury verdict for quantum meruit in favor of
appellee and “cross-appellant,” Bruce E. Thumann (“Thumann”). Thuman appeals
the trial court’s granting of summary judgment on part of his quantum meruit cause
of action, in which he sought unpaid commissions for products shipped prior to the
Texas Workforce Commission’s (“TWC”) “Wage Claim Date.”


 We determine (1)
whether the evidence was legally and factually sufficient to support the jury’s
quantum meruit verdict, (2) whether the trial court improperly admitted testimony
regarding appellate attorney’s fees, (3) whether the trial court erred by denying
Tricon’s summary-judgment and post-judgment motions on Thumann’s quantum
meruit cause of action because collateral estoppel barred that claim, and (4) whether
the trial court erred by granting summary judgment on Thumann’s quantum meruit
cause of action against Tricon for commissions on products shipped prior to the
TWC’s Wage Claim Date. We affirm the judgment of the trial court.  
Facts
          Thuman was hired by Tricon in December of 1987 to operate a new division
that specialized in selling products to apartment building contractors. His
responsibilities included performing “takeoffs”


 from architectural plans, providing
product lists of items needed to complete a job, negotiating sales contracts for Tricon,
submitting bid proposals, ordering products, and scheduling shipments (“shipping
tickets”). He did not handle the actual shipment of products to construction sites.
Thumann was the only salesperson in the division. His compensation included a
salary of $110,000 per year, as well as a commission on product sales, which was paid
on the tenth day of the month following a product’s shipment. The commission
structure agreement between Thumann and Tricon paid Thumann a commission rate
of three and three quarters percent on monthly sales up to $125,000, four percent on
any amount over $125,000 in monthly sales, and six percent on all wood ship sales.
Tricon contended that it had an unwritten policy that no commissions were paid to
employees on products shipped after the employee had been terminated. 
          Tricon terminated Thumann on August 16, 2001. Tricon paid Thumann his
commissions on products that had shipped through August 16, 2001, but did not pay
Thumann for any sales commissions on pending shipments for which he had
completed takeoffs and purchase orders. Thumann filed an administrative claim with
the TWC on November 26, 2001 (“TWC claim”). See Tex. Lab. Code Ann. §
61.051 (Vernon 2006). Thumann asserted in his TWC claim that Tricon had
allegedly terminated him because he “contemplated going into business for himself.”
He sought the amount of $27,613.85 for unpaid wages in the form of commissions,
which he alleged were due from August 16, 2001 through “the first quarter of 2002.”
The TWC issued a “Preliminary Wage Determination Order” on April 24, 2002,
dismissing Thumann’s TWC claim. See id. at § 61.052 (Vernon 2006). Thumann filed
a request for a hearing to contest the preliminary wage determination order. See id. §
61.054 (Vernon 2006). Hearings were conducted on Thumann’s TWC claim on July
1, 2002.
          The TWC issued its “Payday Law Decision” on July 3, 2002, dismissing
Thumann’s TWC claim and making findings of fact and conclusions of law. The
TWC in effect split Thumann’s TWC claim for unpaid wages into two
categories—one for those commissions on products shipped prior to the TWC Wage
Claim Date and another for those commissions on products shipped after the TWC
Wage Claim Date.


 Regarding Thumann’s claim for commissions shipped after the
TWC Wage Claim Date (“commissions for post-December 10 shipments”), the TWC
determined that Thumann’s TWC claim was “not timely filed” (rather, was not yet
ripe) because payment was not yet due at the time that his TWC claim was filed, and
the TWC dismissed that portion of Thumann’s TWC claim for want of jurisdiction. 
Regarding Thumann’s claim for commissions shipped prior to the TWC Wage Claim
Date (“commissions on pre-December 10 shipments”), the TWC determined that that
portion of Thumann’s claim was “timely” (i.e., was ripe), but that he had not earned
and thus was not due commissions for sales shipped after his termination. On July 26,
2002, Thumann sent a letter to the TWC, attempting to withdraw his TWC claim.  

          On August 1, 2002, Thumann sued Tricon in district court for unpaid wages
in the amount of $27,613.85 based on the common-law theories of breach of contract
and quantum meruit. Thumann concedes that this was not a suit for judicial review
of the TWC Payday Law Decision.


 Tricon moved for summary judgment on three
grounds. First, Tricon asserted that Thumann’s claims for breach of contract and
quantum meruit for the recovery of commissions on pre-December 10 shipments was
barred by res judicata because of the TWC’s prior, final decision concerning those
commissions. See Holmans v. Transource Polymers, Inc., 914 S.W.2d 189, 194
(Tex. App.—Fort Worth 1995, writ den’d). Next, Tricon argued that Thumann’s
claims for breach of contract and quantum meruit for the recovery of commissions on
post-December 10 shipments was barred by the TWC’s prior decision because of
collateral estoppel. Lastly, Tricon asserted that Thumann was not entitled to recover
under quantum meruit for commissions on either pre- or post-December 10 shipments
because the record contained an express contract governing those commissions.           The trial court granted Tricon’s motion for summary judgment on the portion
of Thumann’s suit that the TWC had already considered, i.e., commissions on
pre-December 10 shipments—in effect splitting Thumann’s causes of action into
commissions on pre- and post-December 10 shipments. The remaining portion of
Thumann’s claim, for commissions on post-December 10 shipments, went to trial on
June 1, 2004. At trial, the evidence showed that Thumann and Tricon did not have
a written employment contract. Tricon contended that the parties had a verbal
employment contract that included (1) a description of Thumann’s duties, (2)
Thumann’s salary and benefits compensations, and (3) Thumann’s commission
agreement that entitled him to commission on products after they were shipped to a
construction project. Thumann contended that neither the verbal employment contract
nor the commission agreement referenced how commissions for those sales generated
during Thumann’s employment, but shipped after he left the company, would be paid. 
Tricon introduced evidence that the company had a policy of not paying salespersons
commissions for sales generated during employment, but shipped after their
termination. Thumann introduced evidence that there was no written company policy
regarding the payment of commissions after termination and that he had been assured
by one of the co-owners of Tricon that he would be paid for those sales commissions
on products that shipped after his termination. 
          The jury found that Thumann was entitled to judgment based on quantum
meruit, but not breach of contract, and awarded him $5,876.60. Specifically, the jury
answered “No” to question number one of the jury charge, which asked, “Did
[Thumann] and Tricon agree that Tricon would pay Thumann commission for sales
generated during his employment whether or not Thumann was still employed by
Tricon when the products shipped?” The jury answered “Yes” to question number
four of the jury charge, which asked, “Did [Thumann] perform compensable work for
Tricon for which he was not paid?” The trial court entered a final judgment on July
12, 2002. 
          Tricon filed a motion notwithstanding the verdict, a motion for new trial, and
a motion to modify the judgment. Thumann filed a “Motion For New Trial/Rehearing
On The Partial Granting Of [Tricon’s] Motion For Summary Judgment.” The trial
court denied both Thumann’s and Tricon’s post-judgment motions. 
                                                             Unchallenged Ruling
          Thumann does not challenge the trial court’s granting of summary judgment or
entry of judgment on his breach-of-contract claim. Therefore, we affirm that portion
of the final judgment disposing of Thumann’s claim against Tricon for breach of
contract. See Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993); Garcia v. Nat’l
Eligibility Express, Inc., 4 S.W.3d 887, 889 (Tex. App.—Houston [1st Dist.] 1999,
no pet.)

Sufficiency of the Evidence 
          In points of error one and two, Tricon argues that the trial court erred because
the evidence was legally and factually insufficient to support the jury’s verdict on
quantum meruit.  
A.      Standard of Review and the Law 
          In a legal-sufficiency review, “we must view the evidence in a light that tends
to support the finding of disputed fact and disregard all evidence and inferences to the
contrary.” Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003). 
However, “[t]he final test for legal sufficiency must always be whether the evidence
at trial would enable reasonable and fair-minded people to reach the verdict under
review. . . . [L]egal-sufficiency review in the proper light must credit favorable
evidence if reasonable jurors could, and disregard contrary evidence unless reasonable
jurors could not.” City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).
          The jury is the sole judge of witnesses’ credibility, and it may choose to believe
one witness over another; a reviewing court may not impose its own opinion to the
contrary. Id. at 819. Because it is the jury’s province to resolve conflicting evidence,
we must assume that jurors resolved all conflicts in accordance with their verdict if
reasonable human beings could do so. Id.
 
          When, as here, an appellant attacks the legal sufficiency of an adverse finding
on an issue for which it did not have the burden of proof—here, quantum meruit—the
appellant must demonstrate that there is no evidence to support the adverse finding. 
Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). Such a no-evidence challenge
will be sustained when “‘(a) there is a complete absence of evidence of a vital fact, (b)
the court is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no
more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of
the vital fact.’” King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003)
(quoting Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)). 
Evidence does not exceed a scintilla if it is so weak as to do no more than to create a
mere surmise or suspicion that the fact exists. Ford Motor Co. v. Ridgway, 135
S.W.3d 598, 601 (Tex. 2004). 
          If an appellant is attacking the legal sufficiency of an adverse finding to an issue
on which it has the burden of proof—here, the affirmative defense of express
contract—it must demonstrate on appeal that the evidence conclusively established all
vital facts in support of the issue. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241
(Tex. 2001); accord Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 340
(Tex. 1998); Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 940 (Tex. 1991). 
In reviewing such a matter-of-law challenge, the reviewing court employs a two-part
test. Pac. Employers Ins. Co. v. Dayton, 958 S.W.2d 452, 455 (Tex. App.—Fort
Worth 1997, pet. denied) (citing Brady, 811 S.W.2d at 940). The court first examines
the record for evidence that supports the finding, while ignoring all evidence to the
contrary. Dow Chem. Co., 46 S.W.3d at 241. If there is no evidence to support the
finding, the reviewing court examines the entire record to determine if the contrary
proposition is established as a matter of law. Id. If the contrary proposition is
established conclusively, the issue is sustained. Id. 
          In reviewing a factual-sufficiency challenge to a jury finding on an issue on
which the appellant did not have the burden of proof, we consider and weigh all of the
evidence and set aside the verdict only if the evidence that supports the jury finding is
so weak as to make the verdict clearly wrong and manifestly unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986); Bay, Inc. v. Ramos, 139 S.W.3d 322, 329 (Tex.
App.—San Antonio 2004, pet. denied). In reviewing a factual-sufficiency challenge
to a jury finding on an issue on which the appellant had the burden of proof, the
appellant must show that “the adverse finding is against the great weight and
preponderance of the evidence.” Dow Chem. Co., 46 S.W.3d at 242. In either type
of factual-sufficiency challenge, we must examine both the evidence supporting and
that contrary to the judgment. See id.; Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d
442, 445 (Tex. 1989). Additionally, the jury is the sole judge of witnesses’ credibility,
and it may choose to believe one witness over another; a reviewing court may not
impose its own opinion to the contrary. See Golden Eagle Archery, Inc. v. Jackson,
116 S.W.3d 757, 761 (Tex. 2003).
          Quantum meruit is an equitable remedy based on the promise implied by law to
pay for beneficial services rendered and knowingly accepted. Vortt Exploration Co.,
Inc. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990). Quantum meruit
serves as recovery when there is no express contract covering the services furnished. 
Id. To recover on a claim of quantum meruit, a claimant must prove that “(1) valuable
services were rendered or materials furnished; (2) for the person sought to be charged;
(3) which services and materials were accepted by the person sought to be charged
used and enjoyed by him; (4) under such circumstances as reasonably notified the
person sought to be charged that the plaintiff in performing such services was
expecting to be paid by the person sought to be charged.” Id.
          In contending that recovery under quantum meruit is precluded, the defendant
can assert the affirmative defense that there was a valid, express contract with the
defendant covering the supplied services. Id.; Truly v. Austin, 744 S.W.2d 934, 936
(Tex. 1988). The defendant must plead and prove the affirmative defense of an express
contract or the defendant waives it. Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d
671, 685 (Tex. 2000); Freeman v. Carroll, 499 S.W.2d 668, 670 (Tex. Civ.
App.—Tyler 1973, writ ref’d n.r.e.). The defendant is not entitled to a jury issue on
its affirmative defense unless it pleads and proves it. Freeman, 499 S.W.2d at 670. B.Analysis In point of error one, Tricon argues that the evidence supporting the jury’s
quantum meruit verdict for commissions on post-December 10 shipments is legally
insufficient because there is no evidence to support quantum meruit. To the extent that
Tricon’s legal-sufficiency challenge is based on the jury’s implicit rejection of its
express-contract affirmative defense, we construe Tricon’s point of error one as also
arguing that Tricon proved its affirmative defense as a matter of law. In point of error
two, Tricon argues that the trial court erred by denying Tricon’s motion for new trial
because the evidence supporting the jury’s quantum meruit verdict is factually
insufficient. 1.Thumann Rendered Valuable Services To Tricon 
In addressing the first two elements of quantum meruit, Tricon contends that
Thumann failed to present a scintilla of evidence showing that he rendered valuable
services to Tricon. Thumann had to prove that the services that he performed were
provided for the direct benefit of Tricon. See Truly, 744 S.W.2dat 937. In order to
receive a purchase order, Thumann had to fulfill certain duties, including performing
takeoffs from architectural plans, providing product lists of items needed to complete
a job, pricing the items needed, and submitting bid proposals. Most of Thumann’s
time went into preparing takeoffs, each of which typically took six to eight hours to
complete. After receiving a purchase order, Thumann’s duties included writing up a
shipment ticket to pass on to the shipping department for the products to ship or calling
the factory to have products directly shipped to the customers. 
The record reflects that Thumann performed nearly all of the required duties
necessary to generate sales worth $128,310 that shipped after his termination. The
only duty that Thumann did not complete related to those sales was writing a shipment
ticket or calling the factory to have the product shipped to the customer. Thumann’s
near completion of these jobs and negotiation of these sales were valuable services
rendered to Tricon and directly benefitted Tricon by generating income for it. See
Truly, 744 S.W.2d at 937; Bashara v. Baptist Mem’l Hosp. Sys., 685 S.W.2d 307, 310
(Tex. 1985) (stating that lawyer’s efforts benefitted client because lawyer brought
about settlement). Tricon recognized the value of these services by paying Thumann
a salary and commissions up until the time that he was terminated. Viewing the
evidence in the light most favorable to the judgment, we hold that the evidence was
legally sufficient to support the jury’s implicit finding that Thumann rendered valuable
services to Tricon. In support of its factual-sufficiency challenge, Tricon notes that Thumann earned
a commission only when the product shipped and that the post-December 10 shipments
necessarily had not occurred prior to Thumann’s termination on August 16, 2001. The
evidence that Tricon contends undermines the jury’s finding that valuable services
were furnished to Tricon is that Thumann was responsible for scheduling the
shipments to the construction sites, which he failed to do because he was terminated. 
After Thuman was terminated, other employees of Tricon performed the additional
work to ship the products to the construction sites, and Tricon incurred additional
expense to have the products shipped to the contractors. Tricon contends that the
manufacturer of a product could be called five to nine times over the shipping of the
product. 
Tricon also argues that commissions were not the agreed-upon compensation for
the pre-shipment work that Thumann had completed before he was fired. That is,
Tricon asserts that Thumann’s salary was intended to compensate him for contacting
customers, completing takeoffs, and working on quotations (i.e., for all pre-shipment
work) and that the post-shipment commissions were intended to compensate Thumann
for scheduling the shipments. Tricon thus contends that Thumann was compensated
by his salary for his work on the sale of products shipped after December 10, so that
he was not entitled to a commission on these shipments, too. 
There is no written agreement, but only the testimony of a verbal employment
agreement and commission structure agreement. Although both parties presented
evidence supporting their positions, the jury was entitled to give weight to the evidence
presented and to form its own opinion. See Cain, 709 S.W.2d at 176. We cannot say
that the jury’s implicit finding that Thumann provided Tricon with valuable services
relating to products shipped after December 10 is against the great weight and
preponderance of the evidence. See id. We cannot substitute our opinion for that of
the trier of fact. See Hollander v. Capon, 853 S.W.2d 723, 726 (Tex. App.—Houston
[1st Dist.] 1993). We hold that jury’s implicit finding that Thumann provided Tricon
with valuable services is not against the great weight and preponderance of the
evidence and that the evidence is factually sufficient to support this implicit finding. 
          2.       Tricon’s Acceptance of Services and Reasonable Notification
of Thumann’s Expectation of Payment
 
In challenging the last two elements of quantum meruit, Tricon contends that
Thumann failed to present a scintilla of evidence showing that it had accepted 
Thumann’s services and that Tricon had been reasonably notified that Thumann, in
performing such services, was expecting to be paid. The record reflects the following
evidence of acceptance: (1) a Tricon representative confirmed that Tricon had accepted
the benefit of Thumann’s services; (2) Tricon benefitted financially from Thumann’s
sales by billing its customers for Thumann’s sales and accepting payment for his sales;
and (3) Thumann generated more than $120,000 worth of sales from products shipped
for the period following December 10, 2001. We hold that this is legally-sufficient
evidence of Tricon’s acceptance of Thumann’s services.
The notice element focuses on what Tricon, not Thumann, knew or should have
known at the time that Tricon accepted the services. See Heldenfels Bros., Inc. v. City
of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992); Vortt Exploration Co., Inc., 787
S.W.2d at 945; Myrex Indus., Inc. v. Ortolon, 126 S.W.3d 548, 551 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied). The record shows that Thumann was
assured by Elgin Rannefeld, who was part-owner of Tricon, that Thumann would be
paid the commissions for sales that Thumann generated even if the products were
shipped after Thumann’s termination. Rannefeld conceded at trial that he had never
told Thumann that he would not be paid for sales generated prior to Thumann’s
termination, but for which product was not shipped until after his termination. 
Rannefeld had also discussed with Thumann a similar situation with Rannefeld’s prior
employer, in which Rannefeld had demanded payment of commissions for sales
generated prior to his termination, but for which the product was shipped after he had
left the company. Additionally, Tricon’s comptroller testified that he was not shocked
or surprised that Thumann was expecting commissions to be paid on products that had
shipped after his termination. 
The record also reflects that Tricon had no documented policy that a commission
would not be paid on products shipped after an employee’s termination. Even though
there was a verbal commission agreement between Tricon and Thumann, there was
evidence that they did not have an agreement, written or verbal, addressing the
payment of post-termination commissions in the event that Thumann was terminated.
The commission structure agreement made no reference to whether or not commissions
for products sold, but not shipped, before termination would be paid. Thumann
testified that he never would have worked for Tricon had he known of its unannounced
policy not to pay him for sales that he generated during employment that shipped after
his departure. See Vortt Exploration Co., Inc., 787 S.W.2d at 945 (stating that
plaintiff’s testimony that he would not have furnished defendant with information if
he had believed that joint operating agreement would not have been reached was
evidence of defendant’s being reasonably notified that plaintiff expected to be paid for
the services and assistance that were rendered).
Tricon relies heavily on General Homes, Inc. v. Denison, 625 S.W.2d 794 (Tex.
App.— Houston [14th Dist.] 1981, no writ). In Denison, an employee sought recovery
for commissions on the sale of 22 residences that he had initiated during his
employment, but that closed after he was terminated. Id. at 795. In Denison, there was
a written contract that the employee would receive a straight salary during his training
period, with a provision that any sales made during such training period, regardless of
when they were closed, would be divided pro rata with the other salespeople on the
project. Id. The issue was whether this provision expressly covered the employee’s
sales that closed after the employee’s termination. Id. The employee argued that the
written contract did not expressly state that he would not be paid commissions on sales
closed after his termination. Id. at 796. The court in Denison held there was no
evidence that the services rendered were voluntarily accepted by the employer with a
reasonable expectation of its being charged for those services because the employee had
actual knowledge and understanding, on the basis of the contract and the testimony,
that no commissions would be paid on sales closing after termination. Id. The
Denison case is distinguishable from this case because, here, there was evidence that
Tricon had no agreement, written or verbal, pertaining to commissions for sales that
shipped after an employee’s termination and there was evidence that Thumann had a
reasonable expectation that those commissions would be paid.
From the evidence, the jury rationally could have concluded that Thumann
rendered valuable services to Tricon and that Tricon accepted those services and was
reasonably notified that Thumann expected to be paid for them. Viewing the evidence
in the light most favorable to the verdict, we hold that the evidence was legally
sufficient to support the jury’s implicit findings that Thumann’s services were accepted
by Tricon under such circumstances as would reasonably notify Tricon that Thumann
was expecting to be paid regarding post-December 10 shipments.
In its factual-sufficiency challenge, Tricon contends that the following evidence
is contrary to the finding that Thumann’s services were accepted by Tricon under such
circumstances as would reasonably notify Tricon that Thumann was expecting to be
paid. Purchase orders, on which Thumann based his claim for recovery of
commissions, were not a final sale: a contractor could cancel all or part of the products
on a purchase order. Tricon contends that Thumann was responsible for pulling
product from inventory or ordering the product from manufacturers and scheduling
shipments. Therefore, Tricon argues that, after Thumann’s termination, other
employees performed the additional work to ship the products, and Tricon incurred
additional expenses. Tricon also presented evidence that it had a policy that no
commission would be paid on product shipped after an employee was terminated.
Tricon’s president testified that he had no expectation of paying commissions to
Thumann for product shipped after his termination. 
The jury was responsible for determining the credibility of witnesses in
concluding whether there was a policy and whether Tricon knew that Thumann
expected to be paid. The court cannot substitute its opinion for the jury’s implicit
credibility determination as to which party’s evidence to believe on the subject of
whether Tricon knew that Thumann expected to be paid. See Hollander, 853 S.W.2d
at 726. In light of the entire record, we cannot say that the jury’s finding that
Thumann’s services were accepted by Tricon and that Tricon was reasonably notified
that Thumann expected to be paid is against the great weight and preponderance of the
evidence so as to be clearly wrong and manifestly unjust. See Honeycutt v. Billingsley,
992 S.W.2d 570, 578–80 (Tex. App.—Houston [1st Dist.] 1999, pet. denied);
Ortolon, 126 S.W.3d at 551–52. We thus hold that the evidence was factually
sufficient to support these implicit jury findings.
3.       Tricon’s Quantum Meruit Defense: Express Contract 
Tricon argues that “[a]n express contract did exist on the same subject matter
that is the basis for Thumann’s quantum meruit claim. Thumann presented no
evidence that the duties performed by Thumann that would entitle him to a commission
on goods that shipped after his termination were anything other than the regular
anticipated duties of a salesman for which the verbal agreement provided
compensation.” Because Tricon had the burden of proof below on this defense, it
must demonstrate on appeal that the evidence establishes as a matter of law all vital
facts in support of the issue. See Dow Chem. Co., 46 S.W.3d at 241; Sterner v.
Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). 
Jury charge question number one asked: “Was there a contract to pay Mr.
Thumann a commission for sales generated during his employment whether or not
Thumann was still employed by Tricon when the product was shipped?” The jury
answered “No” to this question, establishing that there was no such contract and
implicitly rejecting Tricon’s affirmative defense that there was a contract that no such
commissions would be paid.
Tricon must demonstrate that the evidence conclusively established all vital facts
in support of its affirmative defense of an express contract. See Dow Chem. Co., 46
S.W.3d at 241; accord Martinez, 977 S.W.2d at 340; Brady, 811 S.W.2d at 940. 
Applying the two-prong test, we first examine the record for evidence that supports the
finding that there was no contract between Thumann and Tricon “that Tricon would
pay Thumann compensation for the sales generated during his employment whether or
not Thumann was still employed by Tricon when the product was shipped,” while
ignoring all evidence to the contrary. See Brady, 811 S.W.2d at 940; Dow Chem. Co.,
46 S.W.3d at 241. The evidence to support the jury’s finding reflects that: (1)
Thumann was assured by Rannefeld that Thumann would be paid the commissions for
sales that Thumann generated prior to his termination, but that shipped after his
termination; (2) Rannefeld discussed with Thumann a situation concerning
Rannefeld’s prior employer, in which Rannefeld had demanded payment of
commissions for sales generated prior to his termination, but for which the product
shipped after he had left the company; (3) there was no documented policy that
commissions would not be paid on product shipped after an employee was terminated;
(4) Tricon and Thumann did not have an agreement, written or verbal, addressing the
payment of commissions in the event that Thumann was terminated; (5) the
commission-structure agreement made no reference to whether or not commissions for
products sold, but not yet shipped, would be paid after termination; and (6) Thumann
testified that he never would have worked for Tricon had he known of its unannounced
policy not to pay him for sales that he generated on products shipped after his
departure. This is some evidence that no express contract governed the payment of
commissions on products that were sold before Thumann left, but that were shipped
after he left. 
Although Tricon and Thumann had a verbal employment agreement and
commission-structure agreement, the jury implicitly found, by its negative answer to
question one, that there was no provision in either verbal agreement pertaining to the
payment of commissions for sales generated during employment when the products
sold were shipped after termination. The evidence set out above is some evidence
supporting the jury’s negative answer to question one. 
The jury’s answer to question one is not surprising, given that Tricon argued,
in its closing argument, that no such contract existed. In its closing argument, Tricon
argued:
So when Mr. Thumann was hired he was never told that he
would receive commissions on product that was shipped
after he was terminated. When he was terminated he was
never told that he would receive commissions on product 
that was shipped after he was terminated. There was no
contract. There was no contract agreement. Looking in the
questions, Question Number 1, what is a contract? You are
instructed that a contract is created when there is an offer.
. . . There was no offer. Tricon Tool & Supply never offered
to pay Mr. Thumann at any time commissions on product
that was shipped after he was terminated. . . A meeting of
the minds. Even Mr. Thumann said he was never told. . .
And each party’s consent to the terms. Just didn’t happen.
. . . There was no contract. There was no agreement. 
Answer to Question Number 1 is no. . . .”
 
Therefore, even Tricon admitted that there was no contract covering commissions for
services performed during employment that resulted in shipments after termination. 
          Because there is evidence to support the jury’s finding that there was no
agreement that “Tricon would pay Thumann compensation for the sales generated
during his employment whether or not Thumann was still employed by Tricon when
the product was shipped,” we need not examine the entire record to determine if the
contrary proposition is established as a matter of law. Dow Chem. Co., 46 S.W.3d at
241. We hold that the evidence is legally sufficient to support the finding that there
was no contract. 
          We overrule Tricon’s points of error one and two.
Appellate Attorney’s Fees
          In point of error three, Tricon argues that the trial court erred when it admitted
evidence of appellate attorney’s fees through Thumann’s expert. Joyce Keating,
Thumann’s attorney, gave direct testimony on the matter of attorney’s fees. At the
conclusion of her testimony and over objection, Keating requested leave of court to
return to the witness stand to provide testimony on appellate attorney’s fees. An
opportunity was given to defense counsel to cross-examine Keating on her additional
testimony, but counsel declined. 
A.      Standard of Review
          The admission and exclusion of evidence is committed to the trial court’s sound
discretion. City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995); Moore
v. Bank Midwest, N.A., 39 S.W.3d 395, 401 (Tex. App.—Houston [1st Dist.] 2001,
pet. denied). The standard for reversible error is whether the complained-of error (1)
probably caused the rendition of an improper judgment or (2) probably prevented the
appellant from properly presenting the case to the court of appeals. Tex. R. App. P.
44.1. 
 
          Rule 611 of the Texas Rules of Evidence provides: 
(a) Control by Court. The court shall exercise
reasonable control over the mode and order of
interrogating witnesses and presenting evidence so as
to (1) make the interrogation and presentation
effective for the ascertainment of the truth, (2) avoid
needless consumption of time, and (3) protect
witnesses from harassment or undue embarrassment.
 
(b) Scope of Cross-Examination. A witness may be
cross-examined on any matter relevant to any issue in
the case, including credibility. 
 
See Tex. R. Evid. 611 (a), (b).
 
B.      Analysis
          Keating’s additional testimony on appellate attorney’s fees was not a wholly
unrelated matter from her direct and cross-examination testimony because it included
evidence about Keating’s qualifications, trial and appellate experience, and attorney’s
fees. See id.; Crum & Forster, Inc. v. Monsanto Co., 887 S.W.2d 103, 141 (Tex.
App.—Texarkana 1994, no writ); Tex. Employers’ Ins. Ass’n v. Hitt, 125 S.W.2d 323,
329 (Tex. Civ. App.—Galveston 1939, no writ). Trial courts are allowed nearly
complete freedom to examine counsel to bring out new matters on redirect
examination, and the trial court has broad discretion in determining whether to permit
recross-examination. See Crum & Forster, Inc., 887 S.W.2d at 141. The trial court
is also called to exercise reasonable control over the mode and order of such testimony. 
Tex. R. Evid. 611(a). Tricon had the opportunity to cross-examine Keating on
appellate fees, to test Keating’s credibility, or to seek leave to call its own fees expert
as a witness in rebuttal, but did not do so. Therefore, we hold that the trial court did
not err when it admitted evidence of appellate attorney’s fees. See Nat’l Family Care
Life Ins. Co. v. Fletcher, 57 S.W.3d 662, 669–70 (Tex. App.—Beaumont 2001, pet.
denied). 
          We overrule Tricon’s point of error three. Payday Law Decision
            In its appeal, Tricon attacks the trial court’s denial of its (1) motion
notwithstanding the verdict, (2) motion for new trial, (3) motion to modify the
judgment, and (4) motion for summary judgment on Thumann’s quantum meruit claim
for commissions on post-December 10 shipments. In his appeal, Thumann attacks the
trial court’s granting of summary judgment on his quantum meruit claims for
commissions on pre-December 10 shipments. 
A.      The Law
          The objective of the Texas Payday Act is to deter employers from withholding
wages by providing wage claimants an avenue for the enforcement of wage claims,
many of which would be too small to justify the expense of a civil lawsuit. Wal-Mart
Stores, Inc. v. Lopez, 93 S.W.3d 548, 561 (Tex. App.—Houston [14th Dist.] 2002, no
pet.) (citing Holmans, 914 S.W.2d at 192). The Payday Act is not an employee’s sole
and exclusive remedy for a claim based on past wages, but is, rather, an alternative
remedy that is cumulative of remedies under the common law. See Holmans, 914
S.W.2d at 192–94.
B.      Tricon’s Arguments: Commissions on Post-December 10 Shipments       
          In point of error four, Tricon argues that “[t]he trial court committed reversible
error when it denied Tricon’s motion notwithstanding the verdict, motion for new trial
and motion to modify [the] judgment and Tricon’s motion for summary judgment,
heard prior to trial and on rehearing after trial, for commissions on goods shipped after
December 10, 2001.” Specifically, Tricon argues on appeal that the trial court erred
in denying the hereinabove-mentioned motions because collateral estoppel barred
Thumann’s quantum meruit claim on commissions for post-December 10 shipments.
           To preserve a complaint for appellate review, a party must first present the issue
to the trial court to obtain a ruling. Tex. R. App. P. 33.1(a). We first address Tricon’s
summary judgment motion that Tricon contends preserved its complaint for appellate
review. Tricon brought the alleged collateral-estoppel error to the attention of the trial
court in its motion for summary judgment, which the trial court denied. After a trial
on the merits, as in the present case, the denial of a motion for summary judgment may
not be reviewed on appeal. Ackermann v. Vordenbaum, 403 S.W.2d 362, 365 (Tex.
1966); Daniel v. Falcon Interest Realty Corp., 190 S.W.3d 177, 187–88 (Tex.
App.—Houston [1st Dist.] 2005, no pet.) (holding that when party moves
unsuccessfully for summary judgment and subsequently loses in conventional trial on
merits, denial of that motion generally is not subject to review on appeal); Johns v.
Ram-Forwarding, Inc., 29 S.W.3d 635, 638–39 (Tex. App.—Houston [1st Dist.]
2000, no pet.). Consequently, the trial court’s denial of the Tricon’s motion for
summary judgment is not reviewable on appeal and does not preserve the collateral-estoppel challenge. 
          We next address Tricon’s post-judgment motions that it contends preserved its
complaint for appellate review. The record does not reflect that Tricon brought the
alleged collateral-estoppel error to the attention of the trial court in either its “Motion
Not Withstanding [sic] the Verdict, Motion for New Trial, and Motion to Modify the
Judgment”


 or “First Supplemental Motion Not Withstanding [sic] the Verdict, Motion
for New Trial, and Motion to Modify the Judgment.”


 The only post-judgment
document in which Tricon raised its collateral estoppel argument was in a response to
Thumann’s “Motion for New Trial/Rehearing on the Partial Granting of [Tricon’s]
Motion for Summary Judgment.”


 Tricon’s response argued that the trial court should
treat Thumann’s request for reconsideration of “[Tricon’s] Motion for Summary
Judgment” as a motion for judgment notwithstanding the verdict because there was a
jury verdict. Tricon urged the trial court to consider all issues, including its argument
that the trial court’s denial of summary judgment on commissions for post-December
10 shipments was improper because Thumann’s quantum meruit claim was barred by
collateral estoppel.
          Tricon’s collateral estoppel argument rests on construing Thumann’s post-judgment motion as one for judgment notwithstanding the verdict. We assume without
deciding that, if we can construe Thumann’s post-judgment motion as Tricon argues,
Tricon’s response to Thumann’s post-judgment motions would function as a request
for affirmative relief that would preserve the collateral estoppel issue for review. That
is, we assume without deciding that a response to a judgment- notwithstanding-the-verdict motion could preserve for review an issue that would normally have to be
preserved by a judgment-notwithstanding-the-verdict motion. 
          Tricon’s argument that Thumann’s motion for new trial and request for
reconsideration on “[Tricon’s] Motion for Summary Judgment” be treated as a motion
for judgment notwithstanding the verdict because there was a jury verdict is inapposite. 
Thumann’s complaint in his motion for new trial and rehearing—that the trial court
erred when it granted summary judgment on his quantum meruit claim on commissions
for pre-December10 shipments—concerned an issue that was not submitted to the jury. 
Indeed, Thumann’s complaint is that there was no jury verdict on the matter. Thumann
was not complaining in his motion about the jury’s verdict in his favor on commissions
for post-December 10 shipments; rather, his motion concerned matters that never went
to the jury. One cannot construe a motion that does not challenge a jury’s verdict as
one that does. Thus, Thumann’s rehearing and motion for new trial should not have
been treated by the trial court as a motion for judgment notwithstanding the verdict.
 
          Accordingly, Tricon has not preserved this alleged error for appeal. To preserve
this type of complaint, Tricon had to raise it in (1) a motion for directed verdict; (2) an
objection to the submission of a jury question; (3) a motion for judgment
notwithstanding the verdict; (4) a motion to disregard the jury’s answer to a vital fact
issue; or (5) a motion for new trial. See Cecil v. Smith, 804 S.W.2d 509, 510–11 (Tex.
1991) (citing Aero Energy, Inc. v. Circle C Drilling Co., 699 S.W.2d 821, 822 (Tex.
1985)); see also UPS, Inc. v. Tasdemiroglu, 25 S.W.3d 914, 916 (Tex.
App—Houston [14th Dist.] 2000, pet. denied). Tricon did not properly present the
issue to the trial court by any of these preservation methods. Thus, this challenge is
waived on appeal. See id.
          We overrule Tricon’s point of error four.
C.      Thumann’s Appeal: Commissions on Pre-December 10 Shipments
          In two points of error in his own appeal, Thumann argues that the trial court
erred by granting summary judgment on his quantum meruit claim against Tricon for
commissions on pre-December 10 shipments. 
          1.       Standard of Review
          The standard of review for a traditional summary judgment is well-established:
(1) the movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and that he is, therefore, entitled to summary judgment
as a matter of law; (2) in deciding whether there is a disputed issue of material fact
precluding summary judgment, evidence favorable to the non-movant will be taken as
true; and (3) every reasonable inference must be indulged in favor of the non-movant
and any doubts resolved in his favor. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
548–49 (Tex. 1985). For a defendant to prevail on a traditional summary-judgment
motion, it must either show that there is no genuine issue of material fact concerning
one or more essential elements of the plaintiff’s cause of action or establish each
element of an affirmative defense as a matter of law. Black v. Victoria Lloyds Ins. Co.,
797 S.W.2d 20, 27 (Tex. 1990). When the movant has carried its summary-judgment
burden, the burden shifts to the non-movant, who must present summary-judgment
evidence raising a material fact issue. Westland Oil Dev. Corp. v. Gulf Oil Corp., 637
S.W.2d 903, 907 (Tex. 1982). When, as here, the summary-judgment order does not
state the specific grounds on which it was granted, the non-movant must show on
appeal that no ground alleged in the motion is sufficient to support the granting of the
summary judgment. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989). 
          2.       Res judicata 
          Thumann argues in his point of error two that “[t]he trial court erred in granting
[Tricon’s] motion for summary judgment because Texas law recognizes Thumann’s
right to file suit on his common-law claim for unpaid wages even after having filed a
Payday claim”—that is, that his quantum meruit claim against Tricon for commissions
on pre-December 10 shipments is not barred by res judicata. 
          The doctrine of res judicata addresses the conclusive effects of judgments. Puga
v. Donna Fruit Co., 634 S.W.2d 677, 679 (Tex. 1982). The general principle of res
judicata is that “a party may not dispute a right, question, or fact distinctly put in issue
and directly determined by the final judgment of a court of competent jurisdiction in
a prior suit as a ground of recovery or defense in a later suit between the same parties.” 
Williams v. Nat’l Co., 903 S.W.2d 398, 402 (Tex. App.—Dallas 1995, writ denied). 
Res judicata will not apply when different facts or events exist that lead to a second
lawsuit. Franklin v. Rainey, 556 S.W.2d 583, 585 (Tex. Civ. App.—Dallas 1977, no
writ). The doctrine of res judicata also applies to the relitigation of claims previously
determined by an administrative agency. Harrison v. Gemdrill Int’l, Inc., 981 S.W.2d
714, 718 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); see McMillan v. Tex.
Natural Res. Conservation Comm’n, 983 S.W.2d 359, 363 (Tex. App.—Austin 1998
pet. denied); Friedrich Air Conditioning & Refrigeration Co. v. Bexar Appraisal Dist.,
762 S.W.2d 763, 770 (Tex. App.—San Antonio 1988, no writ); accord United States
v. Utah Constr. & Mining Co., 384 U.S. 394, 421–22, 86 S. Ct. 1545, 1559–60
(1966) (“When an administrative agency is acting in a judicial capacity and resolve[s]
disputed issues of fact properly before it which the parties have had an adequate
opportunity to litigate, the courts have not hesitated to apply res judicata to enforce
repose.”). However, res judicata does not bar a claim if the court rendering judgment
in the initial suit lacked subject-matter jurisdiction over the claim. Harrison, 981
S.W.2d at 718. 
          We agree that the Payday Act is not an employee’s sole and exclusive remedy
for a claim based on past wages, but, rather, is an alternative remedy that is cumulative
of common-law remedies. See Bennett v. Cash Am. Int’l, Inc., 982 S.W.2d 620, 622
(Tex. App.—Houston [1st Dist.] 1998), aff’d, 35 S.W.3d 12 (Tex. 2000); Holmans,
914 S.W.2d at 192–93. Nevertheless, a party may not initially elect one remedy and
then choose the other remedy when dissatisfied with the first result. See Holmans, 914
S.W.2d at 193–94. When a claimant files a claim under the Payday Law, he is
required to abide by the statute’s provisions. See id. To pursue common-law
remedies after filing a claim under the Payday Law, a claimant must withdraw his
claim with the TWC before its decision becomes final. See id.   
          Thumann conceded in his summary-judgment response that the TWC’s order
was final, stating, “Thumann withdrew his Payday claim and did not appeal the final
administrative order thus permitting him to proceed with his common law claim.”
(Emphasis added.) However, Thumann argues in his brief that Holmans stands for the
proposition that “[t]he [TWC’s] decision should not be considered final as precluding
a claimant’s ability to seek an alternative common law remedy unless the claimant
[(1.)] files a claim under the statute, [(2.)] utilizes its remedial scheme by exhausting
all administrative remedies, and [(3.)] appeals the final administrative order.” We
disagree with Thumann’s interpretation of Holmans. The court held in Holmans,
“Should a claimant choose to file a claim under the statute, utilize its remedial scheme,
and appeal the final administrative order, then the claimant is properly required to
abide by the statute’s provisions.” Id. at 193. The court did not, however, define
when an administrative order would become final for purposes of a claimaint’s ability
to seek an alternative common-law remedy. See id. (holding that Payday Law is
cumulative of common law and is alternative remedy that wage claimant may seek; in
that case, because that appellant had withdrawn his administrative claim from the TWC
before its order became final, appellant could pursue common-law remedies). 
          We rely on the Labor Code to define when the TWC’s administrative order
becomes final. The TWC’s decision becomes final 14 days after the date on which it
is mailed, unless a further appeal to the TWC is initiated. See Tex. Lab. Code Ann.
§§ 61.061(c), 61.0614 (Vernon 2006). On July 1, 2002, the TWC held a hearing and
determined that Thumann was not entitled to any unpaid wages from Tricon on
commissions from pre-December 10 shipments. The TWC rendered its decision that
“the determination order issued April 24, 2002, is affirmed.” See Tex. Lab. Code
Ann. 61.059 (Vernon 2006) (stating that TWC may modify, affirm, or rescind
preliminary wage-determination order). The Payday Law Decision had a notice that
stated, “The attached decision will become final 14 days after the date mailed shown
above, unless within that time a party to the appeal files with the Commission a written
motion for a reopening or a written motion for a rehearing. A party to the appeal
seeking judicial review of the agency’s decision must file the request in a court of
competent jurisdiction within 30 days of the date the decision was mailed.”
(Emphasis in original.) 
          Thumann did not attempt to withdraw his claim until July 26, 2002—23 days
after the TWC had issued its Payday Law Decision.


 The TWC’s Payday Law
Decision became final on July 17, 2002—14 days after the date on which the TWC’s
decision was mailed. See Tex. Lab. Code Ann. §§ 61.061(c), 61.0614. Thus,
Thumann’s attempt to withdraw his administrative claim was untimely. Had Thumann
wanted to pursue his common-law remedies concerning commissions on pre-December
10 shipments, he would have had to withdraw his claim with the TWC before its
decision became final. See Holmans, 914 S.W.2d at 193–94. By initiating and
proceeding with his administrative remedies under the statute to a final administrative
decision for commissions on pre-December 10 shipments, Thumann chose to forego
his common-law causes of action to collect those commissions and elected the
alternative remedy provided by statute. See id. Therefore, Thumann was required to
abide by the statute’s provision for seeking review of the final administrative order. 
See id. 
          Thumann did not pursue a suit for judicial review of the TWC’s final decision
on the merits, as permitted by Section 61.062.


 Instead, he instituted this action to
pursue common-law breach-of-contract and quantum meruit remedies against Tricon. 
          The doctrine of res judicata prevents parties and their privies from relitigating
a claim with a final adjudication from a competent tribunal—one of competent
jurisdiction. See Harrison, 981 S.W.2d at 718; Montgomery v. Blue Cross Blue
Shield of Tex., 923 S.W.2d 147, 150 (Tex. App.—Austin 1996, writ denied); see also
Ingersoll-Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 206–07 (Tex. 1999). 
The rationale supporting the doctrine is to prevent splitting claims, thus curbing
vexatious litigation and promoting judicial economy. Valero Energy Corp., 997
S.W.2d at 212. In this case, Thumann’s grievance was heard before an administrative
tribunal of competent jurisdiction and was based on an issue directly determined by the
TWC. The TWC had jurisdiction of Thumann’s claim for the commissions for pre-December 10 shipments and issued a final decision on the merits as to those
commissions. See Igal v. Brightstar Info. Tech. Group, Inc., 140 S.W.3d 820, 825
(Tex. App.—Eastland 2004, pet. granted) (stating that TWC dismissed claim for want
of jurisdiction); 11th Street Bingo Assoc. v. Simonson, No. 13-02-399-CV, 2004 WL
1117161, at *3 (Tex. App.—Corpus Christi, May 20, 2004, no pet.) (not designated
for publication). 
          Accordingly, the trial court did not err by granting, in part, Tricon’s motion for
summary judgment on Thumann’s quantum meruit claim seeking commissions on the
pre-December 10 shipments based on res judicata.
          We overrule Thumann’s point of error two in his appeal.
          3.       Express Contract
          Thumann argues in his point of error one that “[t]he trial court erred in granting
[Tricon’s] motion for summary judgment on Thumann’s quantum meruit claim because
Tricon failed to establish as a matter of law the existence of an express agreement on
pre-December 10, 2001 shipments.” 
          Because summary judgment was proper on res judicata grounds, we do not reach
Thumann’s point of error one concerning whether Tricon failed to establish as a matter
of law the existence of an express agreement. See Rogers v. Ricane Enters., Inc., 772
S.W.2d 76, 79 (Tex. 1989).
 
 
 
Conclusion
 We affirm the judgment of the trial court. 
                                                                                                                                     
                                                             Tim Taft
                                                             Justice
 
 
Panel consists of Justices Taft, Keyes, and Hanks.