JOE TEAGUE AND C. H. (CHARLEY) WALTON V. M. D. EDWARDS ET AL.

No. A-6714. Decided July 9, 1958.
Rehearing Overruled October 1, 1958.
(315 S.W. 2d Series 950)

*Claude S. Cravens,* of Slaton, *Crenshaw, Dupree & Milam* and *J. Orville Smith,* all of Lubbock, fo rpetitioners.

*Calloway Huffaker* and *Harold Green,* of Tahoka, for respondents.

MR. JUSTICE NORVELL delivered the opinion of the Court.

M. D. Edwards and Haskell Edwards (plaintiffs-respondents) brought this action against Joe Teague and C. H. (Charley) Walton to recover the sum of $2872.47 upon an alleged oral agreement to pay the "customary expenses for labor and materials used in rebuilding and repairing a building owned by Teague and Walton." Recovery was denied by the trial court but this judgment was reversed by the Court of Civil Appeals. M. D. Edwards and Haskell Edwards v. C. H. Walton et al., 308 S.W. 2d 587. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the district court.

The trial judge upon proper request filed findings of fact and conclusions of law from which we take the following statement:

M. D. and Haskell Edwards, building contractors, erected the building in question in 1952. They failed to construct the roof in a good and workmanlike manner with the result that it collapsed during a rainstorm on October 22, 1953. Thereafter M. D. and Haskell Edwards agreed with Teague and Walton that they "would reconstruct the roof of said building for the amount of money, if any, recovered from the insurance companies carrying the insurance on the said building; * * * (and) that the Plaintiffs agreed to reconstruct the building, without cost to the Defendants, in order to preserve their reputation as builders."

The trial judge concluded as a matter of law that the contract to repair free of cost (except for such money as might be paid by the insurance companies) was based upon a valuable consideration and that plaintiffs should be denied any recovery against defendants.

There were other parties to the action in the trial court, but considering our disposition of the case, it is unnecessary to mention them or detail their positions other than to say that at one time the companies carrying the storm damage on the building were made parties to the action as third party defendants. However, the action as to these insurance companies were severed from the part involving the asserted liability of Teague and Walton to M.D. and Haskell Edwards for services performed in repairing the building. No recovery had been as yet obtained against the insurance companies. Under the agreement found by the trial court any recovery in the severed suit would inure to the benefit of the Haskells and nothing contained in the trial court's judgment in this case can properly be construed to the contrary.

■ We are unable to agree with the holding of the Court of Civil Appeals that there was a fatal variance between the allegations of defendants' answer and the findings of the trial judge. We have above indicated the contents of the findings in regard to the terms of the agreement to repair. We regard them as amply covered by the allegations in the answer that:

"Defendants say that the Plaintiffs were immediately contacted after the collapse of the roof, whereupon the said defendants, acting by and through the Defendant, M. D. Edwards, advised that they had been concerned about the construction of the roof, and that they stood behind their work, and that they wished to uphold their reputation as builders in the community, and that if the collapse of the roof was due to structural failure, they would rebuild and repair it at their own expense and cost; that if the collapse of the roof be due to a cause covered by insurance on the said building, then they would be paid the amount of the insurance coverage for rebuilding the same; otherwise, there would be no cost to the Defendants for repairing and rebuilding of the same; * * *."

■ We are also of the opinion that the agreement to repair as found by the trial court was supported by a valuable consideration. Laying aside all questions of defects in plans and specifications, implied warranties and the like, it appears that the col-

lapse of the roof was necessarily caused by one of two causes or a combination of them, namely, structural defects or storm damage occasioned by a heavy rainfall. Structural defects may have encompassed two elements, i.e., inadequate plans or defective workmanship. Be this as it may, the plaintiffs, as the builders of the structure, were faced with a possible claim for damages which they could settle by agreeing to reconstruct the roof without charge to the owners with the proviso that should it be established that the damage was caused by excessive rainfall, plaintiffs should have the proceeds of any recovery obtained by Teague and Walton against the insurance companies. Lanes, Boyce & Co. v. Squyres, 45 Texas 382, 10-A Am. Jur. 106, Contracts, Sec. 50. At all events the agreement to pay over the proceeds realized from insurance (although the possibility of recovery from this source might be remote) constituted a sufficient consideration for the promise to repair the building at no expense to Teague and Walton.

■ In urging a recovery upon the theory of quantum meruit, plaintiffs are confronted by a dilema. If there be a valid express contract, a recovery cannot be sustained in quantum meruit. Bennett v. Giles, Texas Civ. App., 12 S.W. 2d 843, no writ history. On the other hand, if the agreement to repair as found by the trial judge be not legally enforcible because of a lack of consideration, it becomes a mere gratuitous promise which can form no basis for an implied promise to pay. In Tennant v. Fawcett, 94 Texas 111, 58 S.W. 824, this court said:

"Should one agree to render a service for another gratuitously, it would seem that he could not recover for the service, for the reason that there is no promise, express or implied, to pay for it. The law would not impute a promise to pay, where there was a distinct understanding that nothing should be paid."

We have examined plaintiffs' (appellants') brief filed in the Court of Civil Appeals and find nothing therein that would militate against an affirmance of the trial court's judgment upon the theory above discussed. The brief contains 27 points of error and while two of them assert that "there is no evidence, or at least the *evidence is insufficient*" to support the trial court's findings upon two controlling or ultimate issues as the terms of the repair contract, we find that the question of "insufficient evidence" or "overwhelming preponderance of the evidence" as a matter of fact, King v. King, 150 Texas 662, 244 S.W. 2d 660, is not presented in the statement and argument set forth under these duplicitous issues. In fact, the issues men-

tioned are grouped with others for the purpose of argument, and there is no contention made that the court's finding to the effect that the plaintiffs agreed to reconstruct the roof of the building for the amount of money, if any, recovered from the insurance company, was against the overwhelming preponderance of the evidence under the rule set forth in the King case. Rather, it is asserted that although the defendant Walton testified to the existence of such agreement, he also said that he "didn't see where we had any grounds to. collect insurance."[1]

This latter statement is then made the basis of a claim that the contract testified to by Walton was not based upon a valuable consideration and hence unenforcible. That issue we have heretofore decided.

We conclude accordingly that the question of "sufficient evidence" although mentioned in the point, has not been briefed and is consequently waived. Burgess v. Sylvester, 143 Texas 25, 182 S.W. 2d 358, 3B Texas Jur. 133, Appeal and Error, Sec. 753.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Opinion delivered July 9, 1958.

Rehearing overruled, Oct. 1, 1958.

1.—Walton testified that while he and a Mr. Killingsworth from Lubbock were looking over the damaged building, M. D. Edwards appeared and asked what Killingsworth was doing there. When told that Killingsworth was figuring on the repair job, Edwards said: "Well there isn't no use in having him, because this is my job." The next day Teague and Walton met with Edwards and according to Walton a lengthy conversation ensued. "Mr. Edwards went into quite a lengthy detail about how he wanted to uphold his reputation as a builder and that he had worried about the building was liable to fall and a lot of nights he couldn't go to sleep for worrying about it falling, and said he would rebuild the building for what insurance we got, if any, and Joe Teague and myself both told him that we didn't see where we had any grounds to collect insurance, but if we did he was welcome to all of it, and that was perfectly agreeable with him at that time." ·