MITSUBISHI AIRCRAFT INTERNA-
TIONAL, INC., Appellant,

v.

Dean MAURER, Appellee.

No. 05–83–00808–CV.

Court of Appeals of Texas,
Dallas.

July 9, 1984.

Robert S. Harrell, Fulbright & Jaworski, Houston, for appellant.

Laurence S. Sanger, Dallas, for appellee.

Before GUITTARD, C.J., and CARVER and WHITHAM, JJ.

WHITHAM, Justice.

Appellee, Dean Maurer, recovered judgment in quantum meruit against his former employer, appellant, Mitsubishi Aircraft International, Inc. We conclude that Maurer's services were covered by an express contract, that Maurer was not wrongfully discharged, that Mitsubishi did not breach the contract and thus prevent Maurer's completion of performance, and that, therefore, Maurer cannot recover the additional compensation sought. Accordingly, we reverse and render.

In December 1978, Mitsubishi employed Maurer as a sales representative. There was no written employment agreement; however, Mitsubishi's 1978 Sales Salary/Incentive Plan was a part of Maurer's employment agreement. Under the 1978 plan, Mitsubishi paid its sales representatives a minimum salary plus a commission for each aircraft sold. In January 1979, Mitsubishi published its 1979 Sales Salary/Incentive Plan. The 1979 plan became part of Maurer's employment agreement. The 1979 plan provided commission payments for turboprop aircraft, as well as used aircraft. Though the plan had a category for jet aircraft, it did not reveal what the commission structure was going to be for jet aircraft.

Contemporaneous with its announcement to market a jet aircraft, Mitsubishi publish-ed an amendment to the 1979 plan which provided a commission structure for the sale of the jet aircraft. The amendment provided as follows:

C. Payments For Jet Orders Which Will Not Be Firmed Up Until 1980 and Will Be Allocated As Follows:

1. 20% with 2nd Deposit (i.e. Firm Order).

2. 20% with Final Deposit (6 Months Prior to Delivery).

3. 60% upon Delivery.

*Personnel may only receive these if they are in employment of [Mitsubishi] at applicable time.* (emphasis added).

Maurer was shown the amendment in June 1979. The 1979 amendment became part of Maurer's employment agreement. Thereafter, Maurer obtained letters of intent and initial deposits for the purchase of jet aircraft by three customers. No commission was due at this stage under the 1979 amendment. Maurer was asked to resign and did so. At the time of Maurer's termination, the second deposit had not been paid by any of the three customers. Under the 1979 amendment, no part of the commission was due until the second deposit had been paid. Thus, Maurer was not in the employ of Mitsubishi "at applicable time" to receive any commission on the sale of jet aircraft. Commissions associated with these three customers were paid to the sales representative who took Maurer's place.

The trial court found that Maurer's services with respect to transactions with the three customers were "extra services" and that these extra services were not within the scope of any contract between Maurer and Mitsubishi. The trial court then concluded that as a matter of law Maurer was entitled to judgment for these extra services. In its first and second points of error, Mitsubishi contends that the evidence was (1) legally insufficient and (2) factually insufficient to support the trial court's findings. Under its first point, Mitsubishi argues that the trial court erred as a matter of law in its conclu-

sion that Maurer was entitled to judgment for these extra services. A "legally insufficient" point is a "no evidence" point presenting a question of law. In deciding that question, the appellate court must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. If a "no evidence" point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely and judgment rendered for the appellant unless the interests of justice require another trial. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Applying these principles to the present case, we conclude that we must sustain Mitsubishi's first point and reverse and render judgment for Mitsubishi.

From the trial court's findings and conclusions of law it is obvious that judgment was rendered on quantum meruit. The right to recover in quantum meruit is based upon a promise implied by law to pay for beneficial services rendered and knowingly accepted. *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80, 86 (Tex.1976). If the work in question is covered by an express contract, there can be no recovery in quantum meruit. 538 S.W.2d at 86; *Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964); *Teague v. Edwards*, 159 Tex. 94, 315 S.W.2d 950, 952 (1958); *General Homes, Inc. v. Denison*, 625 S.W.2d 794, 796 (Tex. App.—Houston [14th Dist.] 1981, no writ).

Thus, we reach the question whether Maurer's work in question was covered by an express contract. An at-will employment contract is continuously subject to modification at the behest of either party. *L.G. Balfour Co. v. Brown*, 110 S.W.2d 104, 107–08 (Tex.Civ.App.—Forth Worth 1937, no writ). In the present case, Mitsubishi made the 1979 amendment known to Maurer and Maurer thereafter continued in Mitsubishi's employment and engaged in the three customer transactions. Maurer admits that the 1979 amendment was part of his employment contract:

Q: And under the '79 Amended Sales/Incentive program for the [three customers] deals, for the orders which you solicited for those deals, what was the amount of commission to which you were entitled under the incentive program?

A: It was $27,500.00

\* \* \* \* \* \*

Q: And that's the plane [sic] that you were shown in June of 1979 when the jet was starting to be marketed, correct?

A: Yes, sir.

Q: And that's the plan that described how you would be compensated for the sales of the jet?

A: That's correct.

Thus, we conclude that Maurer accepted the 1979 amendment as a modification of his at-will employment contract. We conclude further, therefore, that Maurer's work in question was covered by an express contract.

Maurer, however, asserts "limitations and exceptions" to the rule that if the work in question is covered by an express contract, there can be no recovery in quantum meruit. Maurer tells us in his brief:

However, if this Court should find that there was an express agreement covering Maurer's solicitation of orders for Diamond I jet aircraft, Maurer is nevertheless entitled to recover the reasonable value of his services. Like most rules of law, even the rule of *Black Lake Pipe Line Co.* has its limitations and exceptions. Even where there exists an express contract covering work recovery will nevertheless be allowed in at least two cases: (1) where the plaintiff is discharged without good cause; (2) where the defendant's breach prevents plaintiff's completion of performance.

Under his "wrongful discharge" argument, Maurer relies on *McFaull v. Collins*, 208 S.W.2d 142 (Tex.Civ.App.—Austin 1948, writ ref'd). Under his "prevention argument," Maurer cites *Sanderson v. Sanderson*, 130 Tex. 264, 109 S.W.2d 744 (1937); *Colbert v. Dallas Joint Stock Land Bank of Dallas*, 129 Tex. 235, 102 S.W.2d 1031

(1937); *MacArthur Park Corp. v. Sunshine,* 589 S.W.2d 538, 541 (Tex.Civ.App.—Amarillo 1979, no writ); *O'Shea v. I.B.M.,* 578 S.W.2d 844 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.); *Rich v. McMullan,* 506 S.W.2d 745 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.); *Coon v. Schoeneman,* 476 S.W.2d 439 (Tex.Civ. App.—Dallas 1972, writ ref'd n.r.e.); *Sargent v. Highlite Broadcasting Co.,* 466 S.W.2d 866 (Tex.Civ.App.—Austin 1971, no writ); *Dankowski v. Cremona,* 352 S.W.2d 334 (Tex.Civ.App.—Eastland 1961, writ ref'd n.r.e.); *Baca v. Weldon,* 230 S.W.2d 552 (Tex.Civ.App.—San Antonio 1950, writ ref'd n.r.e.); *Live Oak Dairy Corp. v. Kaase,* 45 S.W.2d 657 (Tex.Civ.App.—San Antonio 1931, writ ref'd); *Hilgenberg v. Herring,* 256 S.W. 633 (Tex.Civ.App.—El Paso 1923, writ dism'd).

We conclude that these cases fail to disclose Maurer's exceptions and limitations. Rather, the cases provide a method of calculating damages after a breach of contract has been established. In the present case Maurer was an employee at-will. Mitsubishi, therefore, had the right to terminate him at any time, for any reason. Generally speaking, Texas subscribes to the traditional rule that, absent a specific contract term to the contrary, either the employer or the employee may terminate the employment relationship at anytime, for any reason. The rule has been consistently followed to the present day. *Maus v. National Living Centers, Inc.,* 633 S.W.2d 674, 675 (Tex.App.—Austin 1982, writ ref'd n.r.e.). Thus, when Mitsubishi terminated Maurer, it broke no contract. Consequently, there was no wrongful discharge and no breach of contract preventing Maurer's completion of performance.

Therefore, we conclude that Maurer's wrongful discharge and prevention arguments fail to establish in the present case any limitations or exceptions to the rule that if the work in question is covered by an express contract, there can be no recovery in quantum meruit. It follows and we so hold, that Maurer cannot recover in quantum meruit. Accordingly, we conclude that the trial court erred in rendering judgment in favor of Maurer for additional compensation.

We reverse the judgment of the trial court and we render judgment that Maurer take nothing against Mitsubishi.