**Reverse and Render; Opinion Filed June 25, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00529-CV

**HAMPDEN CORPORATION AND FANTASY DIAMOND CORPORATION, Appellants**
**V.**
**REMARK, INC. AND ROBERT KRAMER, Appellees**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-00342-06**

## MEMORANDUM OPINION
Before Justices Lang, Myers, and Brown
Opinion by Justice Lang

Appellees Remark, Inc. ("Remark") and Robert Kramer filed a breach of contract claim against appellants Hampden Corporation ("Hampden") and Fantasy Diamond Corporation ("Fantasy Diamond") based on a dispute respecting compensation under a sales agreement. Following a bench trial and a subsequent appeal to and remand by this Court,[1] the trial court rendered judgment awarding Remark (1) $67,483.36 in damages and prejudgment interest against Hampden; (2) $228,611.30 in damages and prejudgment interest against Fantasy Diamond; and (3) attorney's fees, costs, and post-judgment interest against both appellants.

In four issues on appeal, appellants contend the trial court erred because (1) the agreement in question was modified as a matter of law, which precludes any recovery; (2)

---

[1] *See Hampden Corp. v. Remark, Inc.*, 331 S.W.3d 489 (Tex. App.—Dallas 2010, pet. denied).

plaintiffs' claim is barred by "waiver or estoppel"; (3) the damages awarded by the trial court improperly included treble damages under the Texas Sales Representatives Act, *see* TEX. BUS. & COM. CODE ANN. § 54.004 (West 2009); and (4) plaintiffs were not entitled to the attorney's fees awarded.

We decide in favor of appellants on their first issue. Consequently, we need not address appellants' remaining issues. We reverse the trial court's judgment and render a take-nothing judgment in favor of appellants. Because the law to be applied in this case is well settled, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.2, 47.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are not disputed by the parties. Hampden and Fantasy Diamond design, manufacture, and sell jewelry and watches. In approximately 1988, Irving Wein, Fantasy Diamond's chairman at that time, contacted Kramer about facilitating sales of those products to retailer JCPenney. Later that same year, Kramer and Remark, a company formed by Kramer, entered into an agreement with Fantasy Diamond and a predecessor to Hampden[2] pursuant to which Remark received commissions on both companies' net sales to JCPenney.

In 1996, Remark was requested by Hampden and Fantasy Diamond to sign a "standard Sales Representation Agreement" and Remark did so (the "1996 Agreement"). The 1996 Agreement provided in part (1) the "Sales Representative," Remark, was to be paid a 5% commission on the net sales of Hampden and Fantasy Diamond products to JCPenney; (2) the agreement would "continue and remain in full force and in effect until cancelled by either party, which cancellation may be effected by either party giving to the other 15 days' notice in writing of its intent to cancel, said notice to be mailed by certified or registered mail"; and (3) "[t]he

---

[2] Hereafter, "Hampden" is used in this background section of this opinion to refer to appellant Hampden and/or its predecessors.

relationship between the Company and the Sales Representative is and shall be that of independently contracting parties and not that of employer/employee."

In 2002, Wein's son, Joseph Wein, became chairman and chief executive officer of both Fantasy Diamond and Hampden. In October of that year, Kramer received separate letters from Louis Price, president of Fantasy Diamond, and Jim Herbert, president of Hampden, stating that as of January 1, 2003, Remark's commission on net sales to JCPenney would be reduced to 2.5%. Each letter requested that Kramer indicate his agreement by "signing below and returning the original" to the sender. Kramer signed and returned each of those letters (collectively, the "2002 Agreement").

Following a meeting with Kramer in summer 2004, Joseph Wein sent Kramer a letter dated July 1, 2004 (the "July 1, 2004 letter"), that stated in part

> Per our conversation, we will convert payment to REMARK from commission to retainer beginning immediately.
>
> Beginning July 1, 2004 REMARK will earn a retainer at an annualized rate of $100,000, or a monthly rate of $8,333.33.
>
> Beginning January 1, 2005, REMARK will earn a retainer at an annualized rate of $75,000, or a monthly rate of $6,250.
>
> Of course, this retainer is "at will" and can be modified or terminated by either of us at any time.

(emphasis original). The letter was on Fantasy Diamond letterhead and the closing stated "Warm personal regards, FANTASY DIAMOND CORPORATION" (emphasis original), followed by Joseph Wein's signature.

Several months later, Joseph Wein sent Kramer a letter dated January 18, 2005 (the "January 18, 2005 letter"), that stated in part (1) "[d]uring those conversations last summer, I told you that you . . . must be prepared for reducing income from Fantasy and Hampden going forward"; (2) "neither Fantasy nor Hampden requires ongoing outside representation at

JCPenney or anywhere else"; and (3) on December 31, 2005, the "retainer" payments "will end entirely" and "our representative relationship will cease." Remark received monthly retainer payments from Fantasy Diamond and Hampden through 2005. No payments were made to Remark or Kramer by Fantasy Diamond or Hampden after December 31, 2005.

In 2006, Remark and Kramer ("plaintiffs") sued Fantasy Diamond and Hampden ("defendants") for, among other claims, breach of contract. In their sixth amended petition, the live petition at the time of the judgment now complained of, plaintiffs asserted in part that defendants breached the 2002 Agreement by failing to pay plaintiffs as required under that agreement and such breach "also violates [the Texas Sales Representatives Act] and entitles Plaintiffs to damages for three (3) times the unpaid commissions" and reasonable attorney's fees and costs. Defendants filed general denial answers.

At the November 17, 2008 bench trial, defendants argued in part that the 2002 Agreement was modified by the parties when defendants provided notice of a change in compensation in 2004 and plaintiffs accepted that change by their "continued performance," i.e. accepting retainer payments from defendants.[3] Plaintiffs argued at trial that the 1996 Agreement, rather than the 2002 Agreement, was the operative agreement between the parties and was breached by defendants.

In a post-trial brief, defendants contended plaintiffs' claim respecting breach of the 1996 Agreement was not supported by plaintiffs' pleadings. The trial court (1) granted plaintiffs leave to file a post-trial "seventh amended petition" asserting breach of the 1996 Agreement and (2) rendered judgment in plaintiffs' favor based on breach of the 1996 Agreement.

---

[3] Additionally, as to the alleged modification, defendants also asserted that subsequent to the July 1, 2004 letter, Joseph Wein sent Kramer a letter dated July 30, 2004, that stated the payments of $8,333 per month would continue through June 2005 and the amount of the monthly payments would change to $6,250 beginning July 1, 2005, rather than January 1, 2005. Defendants referred to that letter and the July 1, 2004 letter, collectively, as the "notice letters" and/or "the 2004 Agreement." However, at trial, Kramer testified he did not remember receiving the July 30, 2004 letter.

Defendants appealed to this Court. In December 2010, this Court concluded the trial court erred by granting plaintiffs leave to file their post-trial pleading. This Court vacated the trial court's judgment and remanded the case to the trial court "to allow it to consider the evidence at trial in light of the claims pleaded in Remark and Kramer's sixth amended petition." *Hampden Corp.*, 331 S.W.3d at 499.

On remand in the trial court, plaintiffs filed a "Motion for Final Judgment." Therein, plaintiffs stated in part that Kramer agreed to the reduction of the commission from 5% to 2.5% in October 2002. Plaintiffs asserted "[t]his commission change to the 1996 commission structure, constitutes the 2002 agreement, which essentially modified the 1996 commission rate, leaving all terms of the 1996 agreement as part of the 2002 agreement." However, plaintiffs contended Kramer "never agreed to have the 2.5% commission altered in any manner." Additionally, plaintiffs alleged that "[s]ubsequently, Defendants ceased paying any commissions or payments to Plaintiff, without providing proper notice as called for in the contract." Plaintiffs claimed damages based on 2.5% of defendants' net sales to JCPenney from January 1, 2003, through October 2008, minus the amounts actually paid to plaintiffs by defendants during that time. Further, plaintiffs asserted that in light of defendants' breach, plaintiffs are entitled to "three times the unpaid commissions" and reasonable attorney's fees and costs pursuant to the Texas Sales Representatives Act.

Defendants filed an "Opposition to Plaintiffs' Motion for Final Judgment and Cross-Motion for Take-Nothing Judgment." Therein, defendants contended in part that they did not breach the 2002 Agreement because "it was modified by mutual agreement effective July 1, 2004" and plaintiffs "were paid everything they were owed under the 2004 Agreement." Specifically, defendants stated

> In analogous cases involving at-will employment, "either party may impose modifications to the employment terms as a condition of continued employment."

When an employer notifies an employee or independent contractor of changes in the terms of their relationship, the employee or independent contractor "must accept the new terms or quit." If he "continues working with knowledge of the changes, he has accepted the changes as a matter of law." Thus, to prove a modification of an at-will contract, a party must show (1) that it gave notice of the change, and (2) the other party accepted the change.

(citing and quoting *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228–29 (Tex. 1986)).

Further, according to defendants,

Fantasy Diamond and Hampden conclusively established that (1) they provided Plaintiffs notice of the changes to the 2002 Agreement, and (2) Plaintiffs accepted those changes as a matter of law. After discussing their financial issues with Kramer, and instead of invoking their unilateral right to terminate their relationship with Kramer and Remark, Defendants notified Kramer that, effective July 1, 2004, they would cease paying him based on a commission structure and instead would begin paying a fixed monthly retainer—specifically, $8,333 per month from July 1, 2004 until June 30, 2005 and $6,250 per month beginning on July 1, 2005. Although Kramer was not asked to countersign Defendants' notice letters, he acknowledged that he received them; he did not quit and instead continued to work as a sales representative for Defendants for the next 18 months; and he accepted and retained all of the monthly retainer payments without complaint. Under these circumstances, Plaintiffs' continuing work and retention of payments constitute acceptance of the 2004 Agreement as a matter of law.

(citations to record omitted).

Plaintiffs and defendants both cited evidence from the November 2008 trial record in their motions, including, in part, copies of the 1996 Agreement; the 2002 Agreement; the July 1, 2004 letter; and the January 18, 2005 letter. Additionally, defendants cited the following testimony of Kramer on direct examination:

Q. . . . So 2002 and 2003, you moved forward and you're now receiving two and a half percent on commissions that you had generated—on sales rather that had been made from Fantasy and Hampden to JCPenney. You're getting two and a half percent now, correct?

A. Correct.

Q. And then in 2004, another letter sent to you saying, hey, we're going to change the deal again. We're not going to give you two and a half percent, we're going to give you a flat fee per month. Do you remember that letter?

A. I remember the letter, but that was a shocker.

Further, Kramer testified as follows on cross-examination:

Q. Now, when you were talking to Mr. Price and Mr. Herbert about this change of compensation from 5 to two and a half percent, they each told you that their companies were going through financial difficulties, correct?

A. I have no recollection of that.
. . . .
Q. You did this to help protect these companies by being able to pay you an amount that they could afford?

A. Correct.
. . . .
Q. Did [Joseph Wein] tell you [in summer 2004] that you had to be prepared to reduce your income from these companies and not be dependent on them going forward?

A. I think he said that. And I said that's not something that his father would ever have done.
. . . .
Q. . . . [Y]ou did receive [the July 1, 2004 letter], correct?

A. Yes.

Q. And this was following your conversation with Mr. Wein about your compensation, correct?

A. Right.
. . . .
Q. And then in January of 2005, you received . . . a letter from Mr. Wein in which he's describing for you the fact that your independent contractor relationship with his—the companies would expire, end on December 31, 2005. Do you remember receiving that letter?

A. Yes.
. . . .
Q. And over . . . the years, [Hampden] and Fantasy Diamond Corporation paid you several hundred—in excess of millions of dollars for compensation for your services rendered, did they not?

A. I've never totaled it up. I don't know what the amount is.

Q. There's no dispute—is there any dispute that they paid you all the commissions you were due until 2002 when the agreement was changed to two and a half percent, and they then paid you two and a half percent until the agreement was changed in 2004, and that they then paid you your retainer amount

in 2004 and 2005? There's no dispute that those amounts were paid to you, correct?

A. Correct.

In a reply to defendants' response and cross-motion, plaintiffs argued in part (1) "there was conflicting testimony as to whether Kramer ever knew that his continued efforts were to be interpreted as an acceptance," which knowledge "is critical to whether the continued effort of the 'employee' will be deemed acceptance" and (2) in *Hathaway*, the court "found that the intent of the parties was not to modify the contract, and continued employment was NOT acceptance of terms not intended." (emphasis original).

At the hearing on plaintiffs' motion for final judgment and defendants' opposition and cross-motion, defendants asserted, *inter alia*, their argument described above that the 2002 Agreement was modified by the parties in 2004 as a matter of law pursuant to *Hathaway*. Plaintiffs asserted in response to that argument that (1) under *Hathaway*, "the employee has to have knowledge of the modification, and it must know the nature and changes and certainty of their imposition, and that was what was missing here" and (2) "[n]o one ever told Bob Kramer, by the way, if you take this money, you are accepting this deal."

Defendants filed a post-hearing response to plaintiffs' reply in which they asserted in part "[b]y citing to [*Hathaway*], Plaintiffs acknowledge (as they must) that only two elements are required to prove a modification of an at-will employment or sales representative contract: (1) unequivocal notice of the change, and (2) acceptance of the change."

In a reply to that response, plaintiffs asserted that "in none of the cases cited by Defendants was there, as here, a clear history of modification procedures." According to plaintiffs' reply, "[t]here is absolutely NO evidence that the parties intended to alter the clear prior method of modifications, providing a signature line on letterhead or signature from ALL DEFENDANTS, and/or signature line for KRAMER to sign and or acknowledge the change"

–8–

and "[n]othing put KRAMER on 'unequivocal notice' that these documents, combined with continued working by KRAMER, would bind REMARK as binding modifications." (emphasis original). Additionally, in the conclusion to their reply, plaintiffs stated as follows:

> As established by the documentary and oral testimony at trial, DEFENDANT FANTASY DIAMOND CORPORATION'S proffer of evidence of a modification:
>
> 1. Contradicted their earlier methods of modification;
>
> 2. Did not advise KRAMER/REMARK the earlier methods of modification with signature were being altered;
>
> 3. Did not advise KRAMER/REMARK that continued service would mean acceptance of the terms;
>
> 4. Reference oral negotiations that were expressly contested and refuted by Plaintiff; and
>
> 5. Did not mention HAMPDEN
>
> As such, KRAMER/REMARK'S continued service did not accept the alleged modifications to the 2002 agreement . . . .

(emphasis original). Attached to plaintiffs' reply were excerpts from trial testimony of Kramer in which he stated he did not "agree to" the 2004 changes to his compensation.

In a final judgment dated January 22, 2013, the trial court rendered judgment in favor of Remark as described above.[4] Defendants filed a timely request for findings of fact and conclusions of law and a notice of past due findings of fact and conclusions of law. No findings of fact or conclusions of law were issued by the trial court. Additionally, defendants filed a "Motion to Vacate, Modify, Correct, or Reform the Judgment" in which they asserted, *inter alia*, the modification arguments described above. That motion was overruled by operation of law. This appeal timely followed.

---

[4] Although Kramer was a plaintiff in the trial court, the trial court's January 22, 2013 final judgment does not award him any relief in his individual capacity. Kramer did not appeal the trial court's judgment. He has filed an "Appellees' Opening Brief" in this appeal jointly with appellee Remark.

## II. MODIFICATION OF THE 2002 AGREEMENT

### *A. Standard of Review*

We review the legal sufficiency of the evidence to support a trial court's judgment after a bench trial under the same standards applicable to a jury's verdict. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989); *Ashcraft v. Lookadoo*, 952 S.W.2d 907, 910 (Tex. App.—Dallas 1997), pet. denied, 977 S.W.2d 562 (Tex. 1998). When there are no findings of fact or conclusions of law filed, the trial court's judgment implies all findings of fact necessary to support it. *See*, *e.g.*, *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Weisfield v. Tex. Land Fin. Co.*, 162 S.W.3d 379, 381 (Tex. App.—Dallas 2005, no pet.). If a reporter's record is filed, an appellant may challenge the legal and factual sufficiency of the trial court's implied findings. *See*, *e.g.*, *Heine*, 835 S.W.2d at 84; *Roberson*, 768 S.W.2d at 281; *Volume Millwork, Inc. v. W. Houston Airport Corp.*, 218 S.W.3d 722, 729 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which the party had the burden of proof, it must show that the evidence establishes as a matter of law all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 710 (Tex. App.—Dallas 2011, pet. denied). The appellant must show that there is no evidence to support the trial judge's finding and that the evidence conclusively establishes the finding urged by the appellant. *See R.J. Suarez Enters. Inc. v. PNYX L.P.*, 380 S.W.3d 238, 245 (Tex. App.—Dallas 2012, no pet.). In our review, we must credit evidence favorable to the finding if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "Evidence is conclusive only if

reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *Id*. at 816.

## B. Applicable Law

Contract modification is an affirmative defense. *Intec Sys., Inc. v. Lowrey*, 230 S.W.3d 913, 918 (Tex. App.—Dallas 2007, no pet.) (citing *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984)). The party asserting it bears the burden of proof. *Id*. (citing *Hathaway*, 711 S.W.2d at 229); *see White v. Harrison*, 390 S.W.3d 666, 674 (Tex. App.—Dallas 2012, no pet.).

## C. Application of Law to Facts

In their first issue, appellants contend the trial court erred by rendering judgment against them on appellees' claim for breach of the 2002 Agreement to pay a 2.5% commission because "as a matter of law, Plaintiffs agreed in July 2004 to a new fixed monthly retainer arrangement that defendants fully performed." Appellants argue "[t]here is no evidence to support an implied finding that plaintiffs did not agree to the July 2004 letter changing the commission to a fixed monthly retainer" and "the evidence conclusively establishes that they did agree to that change." Specifically, according to appellants, (1) contract modifications in "employment-related contexts" require only two elements, "unequivocal notice of the change and acceptance of the change by continued employment" and (2) both of those elements were conclusively established by the evidence in this case. Further, appellants assert "[i]n implicitly holding otherwise—i.e., that Plaintiffs did not 'agree' to the modification set forth in the [July 2004 notice letters]—the court below appears to have disregarded the undisputed evidence or misunderstood the controlling law on contract formation."[5]

---

[5] Appellants assert "[t]he trial court's rulings are necessarily implicit because it did not file any findings of fact or conclusions of law despite Defendants' timely request and past due notice." However, appellants state, "this Court need not follow the usual remedy of abating the appeal and remanding the case because the material facts in question are not disputed and the trial judge (who did not try this case) would do no more than review the same record as this Court would."

Appellees respond that the trial court "was correct in rendering its finding that Defendants breached the [2002 Agreement] because there was never any modification to that agreement." According to appellees, this Court "should affirm the trial court's finding that there was no intent to modify the 2002 agreement, and that because Defendants/Appellants did not provide unequivocal notice, Plaintiffs'/Appellees' continued service was not an agreement of the terms of any post-2002 proposed modification."

In support of their arguments on this issue, both sides cite *Hathaway*. *See* 711 S.W.2d at 227. In that case, plaintiff Gregg N. Hathaway was employed by defendant General Mills, Inc. under an "employment at will contract"[6] to sell shirts for General Mills on a commission basis. *Id*. at 228. On January 21, 1980, Hathaway met with General Mills' national sales manager to discuss lowering Hathaway's 1980 commission rate. *Id*. Hathaway testified he disagreed with the rate change and was told by the national sales manager to discuss the proposed new commission rate with Gary Duncan, Hathaway's regional sales manager. *Id*. Further, Hathaway testified Duncan told him not to worry about the rate change and that Duncan would "take care of the situation." *Id*. Hathaway continued to work for General Mills.

In February 1980, General Mills sent Hathaway a letter proposal containing the new rates. *Id*. Hathaway testified that Duncan told him not to sign the letter and that Duncan would "talk to" the national sales manager about the rate changes. *Id*. Hathaway did not sign the letter. *Id*. After firing Hathaway in April 1980, General Mills offered to pay him under the proposed new, lower commission rates for his work to that time. *Id*. Hathaway sued General Mills for the old, higher commissions, alleging that he never accepted the new rates. *Id*. The case was tried before a jury. *Id*.

---

[6] It is not clear from the opinion in *Hathaway* whether the "employment at will contract" in that case was in writing. *See id*.

In its answers to the jury questions, the jury found (1) Hathaway did not accept or ratify the commission rate change and (2) General Mills ratified Hathaway's refusal to accept the changes. *Id*. Based on those findings, the trial court rendered judgment in favor of Hathaway. *Id*. This Court reversed, holding that Hathaway accepted the lower rates as a matter of law by continuing to work for General Mills knowing of the changed rates. *Id*.

On appeal to the supreme court, Hathaway argued General Mills did not clearly notify him of the rate changes and, therefore, he did not accept the modification as a matter of law by remaining with General Mills. *Id*. The supreme court agreed. *Id*. That court stated "to prove a modification of an at will employment contract, the party asserting the modification must prove two things: (1) notice of the change; and (2) acceptance of the change." *Id*. at 229. Specifically, that court stated

> To prove notice, an employer asserting a modification must prove that he unequivocally notified the employee of definite changes in employment terms. Cases dealing with employment modifications require that the employee have knowledge of the proposed modification. Fairness also dictates this rule. To have knowledge of a modification, the employee must know the nature of the changes and the certainty of their imposition.
> The employer asserting a modification must also prove that the employee accepted the proposed changes. If the employer proves that he has unequivocally notified the employee of the changes, the employee's continuing employment will constitute acceptance as a matter of law.

*Id*. (citations omitted). The supreme court reasoned that the record, which included Hathaway's testimony that he was told to discuss the changes with Duncan and was told by Duncan not to worry and that Duncan would "take care of it," showed evidence of "conflicting signals from General Mills' managers" that made "unequivocal notification" a jury question. *Id*. The supreme court concluded that because General Mills did not conclusively prove or request a jury question on notification, that element must be deemed in support of the judgment and against unequivocal notification. *Id*.

–13–

In the case before us, appellants argue, without citing authority, that the sales representative agreement between the parties is "analogous" to an "at-will employment contract." Further, appellants assert in their appellate brief that courts have "consistently applied" the principles stated in *Hathaway* "to enforce modifications of compensation agreements with sales representatives, and to reject their claims for breach of the original agreement." In support of that assertion, appellants cite several Texas cases involving employee/employer relationships and one federal case involving a non-employee sales agent. *See Mitsubishi Aircraft Int'l, Inc. v. Maurer*, 675 S.W.2d 286 (Tex. App.—Dallas 1984, no writ) (involving employee sales representative); *L.G. Balfour Co. v. Brown*, 110 S.W.2d 104 (Tex. Civ. App.—Fort Worth 1937, no writ) (involving employee sales representative); *Perkins v. Ulrich*, No. 14-05-00992-CV, 2007 WL 1191903 (Tex. App.—Houston [14th Dist.] Apr. 24, 2007, no pet.) (involving sales associate employed by home builder); *Bell v. Phillips*, No. 14-00-01189-CV, 2002 WL 576036 (Tex. App.—Houston [14th Dist.] Apr. 18, 2002, no pet.) (involving employee sales representative); *Century Sales, Inc. v. Jupiter Aluminum, Inc.*, No. 4:02-CV-0607-A, 2002 WL 31875610 (N.D. Tex. Dec. 20, 2002) (involving non-employee sales agent).

The record shows the 1996 Agreement stated "[t]he relationship between the Company and the Sales Representative is and shall be that of independently contracting parties and not that of employer/employee." However, like appellants, appellees assert that the requirements stated in *Hathaway* are applicable to this appeal and, as described above, cited *Hathaway* in support of their arguments on remand in the trial court. Therefore, we adopt the proposition utilized by the Fourteenth Court of Appeals in Houston in *Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341, 350 n.2 (Tex. App.—Houston [14th Dist.] 2001, pet. denied), that "[a]lthough *Hathaway* specifically deals with an at-will employment contract, we will accept as true both

–14–

parties' assertion that its analysis should be applied to the parties' agreement in this case." *Id*. (applying *Hathaway* requirements in case involving non-employee sales representative); *see also Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 606 (Tex. 2002) (applying law pertaining to at-will employment after concluding independent insurance agent whose contract with insurance company provided either party could terminate without cause upon ten days' notice was "an at-will agent" and "as the parties acknowledge, his relationship with [the insurance company] has all the characteristics of at-will employment").[7]

Appellees argue this case is distinguishable from the cases cited by appellants and fails to meet the requirements of *Hathaway* because appellants' "unilateral proposed 'modification'" altered the parties' "prior modification procedures." According to appellees,

> There is absolutely NO evidence that the parties intended to alter the clear prior method of modifications, providing a signature line on letterhead or signature from ALL DEFENDANTS, and/or signature line for KRAMER to sign and or acknowledge the change. Nothing put KRAMER on "unequivocal notice" that these documents, combined with continued working by KRAMER, would bind REMARK as binding modifications.

(emphasis original). Additionally, appellees contend (1) "FANTASY DIAMOND CORPORATION'S proffer of evidence of a modification . . . [d]id not mention HAMPDEN" (emphasis original); (2) the parties' "prior modifications with signatures and from both defendants" "expressly contradict any interpretation of [the July 2004 notice letters] as BINDING MODIFICATIONS" (emphasis original); and (3) Kramer "unequivocally denied agreeing to" or "negotiating" any of the new terms. In support of those arguments, appellees cite (1) *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2000), in which the supreme court, in concluding the notice in that case was unequivocal and the employee's continuing employment constituted acceptance, quoted language in the "notice documents" that "explained" the

---

[7] Like the court in *Price Pfister*, we "express no opinion, however, whether *Hathaway* governs oral agreements outside of the context of at-will employment." *Price Pfister*, 48 S.W.3d at 350 n.2.

–15–

modification, stated the effective date, and "explained that by working after that date an employee would indicate that he or she accepted the provision" and (2) *Hathaway*.[8]

To the extent appellees contend *In re Halliburton* requires appellants to show Kramer knew his continued service and acceptance of the monthly retainer payments would indicate he accepted the alleged modification, we cannot agree. While *In re Halliburton* quotes portions of a notice that so advised the employee in that case, the law specifically stated and applied in that case is the two-part test from *Hathaway* and no additional elements of proof are described or imposed by the *In re Halliburton* court. *See In re Halliburton*, 80 S.W.3d at 568–69, 572–73.

Next, we consider appellees' assertion that the July 1, 2004 letter did not "mention" Hampden. Appellees do not specifically explain how this assertion is material to their argument. To the extent this assertion can be construed as an argument that appellees were not given notice that the alleged modification pertained to Hampden as well as Fantasy Diamond, the record shows Kramer testified (1) Joseph Wein told him in summer 2004 that he had to be prepared to reduce his income from "these companies" and not be dependent on "them" going forward and (2) Kramer received the July 1, 2004 letter from Joseph Wein following that conversation. The July 1, 2004 letter stated in part "[p]er our conversation, we will convert payment to REMARK from commission to retainer beginning immediately." The letter was signed by Joseph Wein, who was chairman and chief executive officer of both Fantasy Diamond and Hampden. While the July 1, 2004 letter did not "mention" Hampden, the record shows that letter was written pursuant to a conversation between Kramer and Joseph Wein respecting payments from both Fantasy Diamond and Hampden. Further, there is no evidence in the record that any party

---

[8] Additionally, appellees cite *Stowers v. Harper*, 376 S.W.2d 34 (Tex. Civ. App.—Tyler 1964, writ ref'd n.r.e.) for the same statement of law quoted above from *Hathaway*.

–16–

intended or understood that the change from commission to retainer pertained only to Fantasy Diamond.

As to appellee's remaining arguments, *Hathaway* provides that if an employer proves he "unequivocally notified" an at-will employee of "definite changes in employment terms," the employee's continuing employment will constitute acceptance of the changes as a matter of law. *Hathaway*, 711 S.W.2d at 229. "To have knowledge of a modification, the employee must know the nature of the changes and the certainty of their imposition." *Id*. The July 1, 2004 letter (1) stated that pursuant to a prior conversation between Kramer and Joseph Wein, which the record shows pertained to reducing Kramer's income from both Fantasy Diamond and Hampden, payment to Remark would be converted to retainer "beginning immediately" and (2) set forth in detail the amounts of the retainer payments to be received by Remark. Although appellees cite *Hathaway* and *In re Halliburton* in support their position that appellants were required to advise them that "the earlier methods of modification with signature were being altered" neither of those cases mentions or addresses any "earlier methods of modification" or any requirement to advise as to alteration of such. *See id*. at 228–29; *In re Halliburton*, 80 S.W.3d at 568. Further, appellees cite *Hathaway* to support their position that "prior modifications with signatures and from both defendants" "expressly contradict" any interpretation of the July 1, 2004 letter as a binding modification. However, unlike the case before us, *Hathaway* involved "conflicting signals" during the parties' communications pertaining to the alleged modification in question in that case. *Hathaway*, 711 S.W.2d at 229. Appellees cite no authority, and we have found none, to support the position that the "prior modifications" alleged by appellees constitute "conflicting signals" pursuant to *Hathaway*. Finally, Kramer's testimony that he "unequivocally denied agreeing to" or "negotiating" any of the alleged modifications is immaterial to our analysis of whether the record establishes the two elements required by *Hathaway*. *See id*.

On this record, we conclude the evidence conclusively established appellants "unequivocally notified" appellees of the change in question and appellees accepted that change. Accordingly, we conclude the parties' 2002 Agreement was modified as a matter of law. *See id.*

We decide in favor of appellants on their first issue.

### III. CONCLUSION

We decide appellants' first issue in their favor. In light of our resolution of that issue, we need not address appellants' remaining issues.[9]

We reverse the trial court's judgment and render a take-nothing judgment in favor of appellants.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

130529F.P05

---

[9] Additionally, appellees (1) state in the fact section of their appellate brief that "[n]o notice via certified mail was ever provided as required under the terms of the agreement" and (2) asserted in part during oral argument before this Court that the fifteen-day notice of termination by certified or registered mail as required by the parties' agreement "did not occur here." However, appellees stated during oral argument (1) although the trial court's judgment from which this appeal is taken did not specifically address the termination date of the parties' agreement, the damages awarded by the trial court appear to be based on a termination date of December 31, 2005 and (2) appellees do not contest that the parties' agreement was terminated effective December 31, 2005. Appellees did not appeal the trial court's judgment, nor do they assert a cross-issue or argument in their appellate brief respecting the termination date of the agreement. Therefore, appellees' assertions respecting the termination date of the parties' agreement present nothing for this Court's review. *See* TEX. R. APP. P. 25.1(c), 38.2.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HAMPDEN CORPORATION AND
FANTASY DIAMOND CORPORATION,
Appellants

No. 05-13-00529-CV          V.

REMARK, INC. AND ROBERT
KRAMER, Appellees

On Appeal from the 366th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 366-00342-06.
Opinion delivered by Justice Lang, Justices
Myers and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and judgment is **RENDERED** that appellees REMARK, INC. and ROBERT
KRAMER take nothing on their claims.

It is **ORDERED** that appellants HAMPDEN CORPORATION and FANTASY
DIAMOND CORPORATION recover their costs of this appeal from appellees REMARK, INC.
and ROBERT KRAMER.

Judgment entered this 25th day of June, 2014.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

–19–